UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UPDATEME INC.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>AXEL SPRINGER SE, et al.,<br><br>　　　　　Defendants. | Case No. 17-cv-05054-SI<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Re: Dkt. Nos. 15 , 27 |

On November 17, 2017, the Court heard argument on defendants' motion to dismiss.  (Dkt. Nos. 15, 27).  For the reasons set forth below, the Court GRANTS in part and DENIES in part defendants' motion to dismiss with leave to amend.

## BACKGROUND

### I.　　Factual Background

The following facts are drawn from the complaint, which the Court treats as true for the purposes of this motion.  Plaintiff Updateme Inc. is a California corporation with its principal place of business in Palo Alto, California.  Complaint ¶ 5 (Dkt. No. 1).  Defendant Axel Springer SE is a societas Europaea[1] with its principal place of business in Berlin, Germany.  *Id.* ¶ 6.  Defendant Axel Springer Services, Inc. is a Delaware corporation with its principal place of business in New York.  *Id.* ¶ 7.  Defendant Axel Springer Digital Ventures GmbH ("ASDV") is a "Gesellschaft mit beschrankter Haftung"[2] with its principal place of business in Berlin, Germany.

---

[1] The complaint defines societas Europaea as a "public company registered in accordance with the corporate law of the European Union."  Compl. ¶ 6.

[2] "Gesellschaft mit beschrankter Haftung" is "a legal entity registered in accordance with

*Id.* ¶ 8.  Defendant upday GmbH & Co. KG ("upday") is a Kommanditgesellschaft[3] with its principal place of business in Berlin, Germany.  *Id.* ¶ 9.  Axel Springer Services, ASDV, and upday are all wholly owned subsidiaries of Axel Springer SE.  The complaint refers to all four defendants collectively as "Axel Springer."

Updateme is a "mobile news-aggregation application" that aims to provide algorithmically tailored "short bullets of news" based on "Terms" or topics the user selects.  *Id.* ¶¶ 14-17.  Updateme owns two federally registered trademarks for the app: U.S Trademark No. 4,777,341 for the character mark "updatemi," registered for providing a website with news bulletins, and U.S. Trademark No. 4,777,340 for the word "updatemi" in a lowercase font with a magenta solid circle above the "i" and three magenta solid circles below the "i," registered for the same purpose.  *Id.* ¶¶ 20-21.  Updateme has continuously used the updatemi® marks in commerce and advertising and claims they are both inherently distinctive and have acquired secondary meaning.  *Id.* ¶¶ 22-24.  In September 2014, updatemi® changed the logo, incorporating a pink "smiley" logo without eyes.  *Id.* ¶ 47.

Beginning in 2012, Axel Springer representatives arrived in Silicon Valley to build a "European partnership" with the startup community to digitize their news service.  *Id.* ¶ 25.  Updateme co-founder Michael Hirschbrich first met with two Axel Springer representatives—Kai Diekmann and Peter Würtenberger—at an informal meeting in San Francisco, California on or about February 7, 2013 to discuss possible investment and partnership.  *Id.* ¶¶ 26-27.  Following this and other informal meetings, Hirschbrich presented a formal pitch of the updatemi® app to Diekmann at his Palo Alto house on or about February 24, 2013.  *Id.* ¶¶ 29-30.  In accordance with startup industry practices, the parties had "the specific understanding that the information would only be used by Axel Springer to evaluate a possible investment or joint venture."  *Id.* ¶¶ 31-34.  In summer 2013, Diekmann invited Hirschbrich to present information on updatemi®'s product

the corporate law of Germany."  *Id.* ¶ 8.

[3] Kommanditgesellschaft is a "public company registered in accordance with the corporate law of Germany." *Id.* ¶ 9.

2

strategy, business model, and monetization strategy to two additional Axel Springer representatives in Silicon Valley for a possible collaboration. *Id.* ¶¶ 35-37. At Diekmann's urging, on March 18, 2014, Hirschbrich met with two new representatives—Anton Waitz, Managing Director for ASDV, and his assistant, Mischa Gorbunow—in Silicon Valley to conduct a formal pitch and two-hour demonstration of the private prototype of the updatemi® app. *Id.* ¶¶ 39-41. Waitz and Gorbunow made similar assurances about not using plaintiff's information for purposes other than evaluating an investment in plaintiff. *Id.* ¶¶ 40, 43, 46.

In4 October 2014, a different Axel Springer manager, Malte Goesche, invited Hirschbrich to come to Berlin to discuss his vision for an investment in updatemi®. *Id.* ¶ 48. Hirschbrich then suggested two monetization modes: pre-installing the app with mobile phone companies and preferring Axel Springer sources when pushing updates. *Id.* Hirschbrich also showed Goesche a "card-design model for the application, where the user viewed cards containing Updates with a headline and bullets, and where the user could swipe through different cards[.]" *Id.*

In November 2014, Waitz reiterated Axel Springer's interest in the app and asked Hirschbrich to send a written description of the updatemi® app functionality along with a pitch document. *Id.* ¶¶ 50-51. Hirschbrich emailed the requested documents to Waitz and followed up with Goesche on November 11, 2014. *Id.* ¶¶ 51-52. Goesche informed Hirschbrich that he shared the materials with Daniel Böcking and Julian Riechelt—management at *Bild*, an Axel Springer tabloid—who expressed strong interest in a partnership. *Id.* ¶¶ 52-54. Between November 2014 and January 2015, Goesche informed Hirschbrich that he shared information on updatemi® with the *Bild* brand's Audience Development Workshop and Sebastian Bourmer, another Axel Springer representative. *Id.* ¶¶ 55-56.

On September 1, 2015, Axel Springer issued a press release announcing the launch of a new product called "upday." *Id.* ¶ 58. Plaintiff alleges this product incorporates information stolen from Updateme's investment pitches. *Id.* ¶ 57. "upday" provided an algorithm-tailored news bulletin based on a user's topics of interest, used a smiley logo without eyes, and, as of February 22, 2016, was pre-installed on certain Samsung smartphones in Germany, Poland, France, and the United Kingdom. *Id.* ¶¶ 58-61. The app is also available for download in the

United States on the Google Play store. *Id.* ¶ 62. Axel Springer announced in its 2016 Annual Report that upday had already reached the top ten of online news brands in Germany by the end of 2016 and was planning further expansion into other European countries. *Id.* ¶¶ 65-66. Plaintiff alleges that the upday app's concept, functionality, logo, name, and business plan are all nearly identical to the information from updatemi® pitches. *Id.* ¶¶ 67-75.

## II.      Procedural Background

Plaintiff initially warned defendants of its intent to sue under California and German law in a pair of January 21, 2017 letters from its California and German legal teams, respectively. First Mallman Decl. Exs. B, C (Dkt. No. 17). The parties exchanged letters over several weeks and met for a failed attempt at an "amicable solution." First Mallman Decl. ¶ 7. On June 10, 2016, Axel Springer SE, upday, and Axel Springer Digital Ventures Inc. filed a negative declaratory judgment action in the District Court of Berlin in Germany. *Id.* ¶ 8. Plaintiff Updateme submitted its mandatory responsive filing on October 7, 2016, but made no affirmative claims in German court. *Id.* ¶ 9. Plaintiff did not present further evidence beyond screenshots and did not call any witnesses, even those based in Germany. Second Mallman Decl. ¶ 8 (Dkt. No. 34-2). The German court scheduled a hearing for October 4, 2017. First Mallman Decl. ¶ 11.

On August 30, 2017, plaintiff filed the present lawsuit, asserting six claims: (1) breach of contract; (2) trademark infringement under the Lanham Act; (3) common law trademark infringement; (4) fraud; (5) promissory estoppel; and (6) unfair competition. On September 29, 2017, Plaintiff informed the German court that it had initiated proceedings in the United States. Second Mallman Decl. ¶ 9. The German court held its conciliation and oral hearing on October 4, 2017. *Id.* ¶ 10. Following the hearing, the District Court of Berlin granted the negative declaratory judgment, finding no valid claims under German law. *Id.* ¶ 13; *see also* Second Mallman Decl., Ex. B. A full decision including the grounds for judgment generally follows several weeks after a hearing, but the German court has not yet released such a decision. Second Mallman Decl. ¶ 16.

Defendants Axel Springer SE, Axel Springer Services, and ASDV (herein, collectively "defendants") now move to dismiss plaintiff's complaint in its entirety. Mot. to Dismiss (Dkt. Nos. 15, 27). In addition, defendants seek judicial notice of the German litigation.[4] First Mallman Decl. ¶ 15. Defendant upday has not yet been served. Ruttenberg Decl. ¶ 9 (Dkt. No. 29). Additionally, plaintiff objected under Civil Local Rule 7-3 to defendants' introduction of new arguments in their reply brief. Dkt. No. 37.

## LEGAL STANDARD

### I.     Deference to Foreign Litigation

####     A.     International Abstention

The doctrine of abstention permits a district court to decline jurisdiction in deference to a parallel proceeding. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). However, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule" and applies only in "exceptional circumstances." *Id.* The district court should weigh various factors in the international context.[5] These factors include avoidance of piecemeal litigation, the order the forums obtained jurisdiction (*i.e.*, the "first-to-file" rule), the rule of decision, parallelism of the suits, avoidance of forum shopping, and appropriate use of judicial resources. *See Seneca Ins. Co., Inc. v. Strange Land, Inc.*, 862 F.3d 835, 841-47 (9th Cir. 2017). These factors are not a checklist; they must instead be considered "with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)). "Though 'exact parallelism . . . is not required,' substantial similarity of

---

[4] To the extent the Court has access to these records in English, the Court GRANTS this request. The Court finds these documents are "not subject to reasonable dispute because [they] . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *See* Fed. R. Evid. 201(b)(2). However, the Court must note its information is incomplete. Defendants have only included their reply brief and the District Court of Berlin's initial October 9, 2017 order. *See* Mallman Decl. 1, Ex. G; Mallman Decl. 2, Ex. B. Neither party has supplied the initial claim for declaratory relief, plaintiff's response brief, or a transcript of the October 4, 2017 hearing.

[5] The federalism concerns surrounding the state-federal distinction do not apply in the context of parallel foreign proceedings. *See Colorado River*, 424 U.S. at 813-14.

claims is necessary before abstention is available." *Id.* at 845 (quoting *Nakash v. Marciano*, 882 F.2d 1411, 1416 (9th Cir. 1989)). Still, "conflicting results, piecemeal litigation, and some duplication of judicial effort is the unavoidable price of preserving access to . . . federal relief." *Tovar v. Billmeyer*, 609 F.2d 1291, 1293 (9th Cir.1979). The Ninth Circuit "reject[s] the notion that a federal court owes greater deference to foreign courts than to our own state courts." *Neuchatel Swiss Gen. Ins. Co. v. Lufthansa Airlines*, 925 F.2d 1193, 1195 (9th Cir. 1991).

### B. International Comity

"International comity 'is the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws.'" *Cooper v. Tokyo Elec. Power Co., Inc.*, 860 F.3d 1193, 1205 (9th Cir. 2017) (quoting *In re Simon*, 153 F.3d 991, 998 (9th Cir. 1998)). Comity is a rule of practice, not law, intended to promote good relations between sovereigns. *Mujica v. AirScan Inc.*, 771 F.3d 580, 598 (9th Cir. 2014). When deciding whether to dismiss a case on comity grounds, a district court should weigh (1) "the strength of the United States' interest in using a foreign forum," (2) "the strength of the foreign governments' interests," and (3) "the adequacy of the alternative forum." *Cooper v. Tokyo Elec. Power*, 860 F.3d at 1205 (quoting *Ungaro-Benages v. Dresdner Bank AG*, 379 F.3d 1227, 1238 (11th Cir. 2004)).

In determining the strength of the United States' interest in using a foreign forum, a court should consider the following non-exclusive factors: "(1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests." *Mujica*, 771 F.3d at 604. This analysis includes examining whether there is a conflict between U.S. and foreign law, though a "true conflict" of laws is not a prerequisite for comity. *Id.* at 602-03. The court should apply the same factors when considering the strength of the foreign government's interest. *Id.* at 607. The closer the link between the sovereign and the conduct—as in criminal cases or cases involving government parties—the stronger the sovereign interest. *Id.* at 606. When examining the

adequacy of the forum, the court should ask "'(1) whether the judgment was rendered via fraud; (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence; and (3) whether the foreign judgment is prejudicial [and] . . . repugnant to fundamental principles of what is decent and just.'" *Id.* at 607-08 (quoting *Belize Telecom, Ltd. v. Gov't of Belize*, 528 F.3d 1298, 1306 (11th Cir. 2008)).

### C. *Forum non conveniens*

*Forum non conveniens* is a common law doctrine allowing a court to decline to exercise its jurisdiction in cases where litigation in the forum would place an undue burden upon one of the parties. The *forum non conveniens* determination lies in the court's discretion, but is an "exceptional tool to be used sparingly." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1143 (9th Cir. 2001); *Ravelo Monegro v. Rosa*, 211 F.3d 509, 514 (9th Cir. 2000). The burden is on the moving party to make "a clear showing of facts which establish such oppression and vexation of a defendant as to be out of proportion to plaintiff's convenience, which may be shown to be slight or nonexistent." *Ravelo*, 211 F.3d at 514; *see also Baris v. Sulpicio Lines, Inc.*, 932 F.2d 1540, 1549 (5th Cir. 1991).

"A party moving to dismiss based on *forum non conveniens* bears the burden of showing (1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal." *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1118 (9th Cir. 2002). "[A]n alternative forum ordinarily exists when the defendant is amenable to service of process in the foreign forum." *Lueck*, 236 F.3d at 1137 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981)). "The foreign forum must provide the plaintiff with some remedy for his wrong in order for the alternative forum to be adequate." *Id.* A plaintiff's choice of home forum is generally granted deference, but is not absolute. *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1076 (9th Cir. 2015) (citing *Piper Aircraft*, 454 U.S. at 255).

United States District Court
Northern District of California

## II.    Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings, without thereby transforming the motion into a motion for summary judgment. *Id*. at 688-89.

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted). Dismissal of a complaint without leave to amend is proper only if it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987) (quoting *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980)); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012).

**DISCUSSION**

Defendants move to dismiss the action in light of the pending litigation in Germany. However, if the Court declines to defer to the German litigation, defendants move to dismiss the complaint in its entirety for failure to state a claim.

## I.     Deference to Foreign Litigation

Defendants argue that the Court should defer to the German litigation and dismiss plaintiff's complaint under the doctrines of international abstention, comity, and *forum non conveniens*. Mot. at 6 (Dkt. No. 15). Plaintiff contends that there is no basis to dismiss this case in light of the German litigation, and that it has sufficiently pled all of its claims. Opp'n (Dkt. No. 30).

### A.     International Abstention

When presented with a motion to dismiss or stay under the doctrine of abstention, a court must weigh the *Colorado River* factors. 424 U.S. 800. The key to this inquiry is determining whether "exceptional circumstances" warrant federal abstention where there is a parallel proceeding in another forum. *See Seneca Ins.*, 862 F.3d at 841. In the context of parallel foreign proceedings, a court should weigh "(1) whether either court has assumed jurisdiction over a res, (2) the relative convenience of the forums, (3) the desirability of avoiding piecemeal litigation, (4) the order in which the forums obtained jurisdiction, (5) what law controls, and (6) whether the foreign proceeding is adequate to protect the parties' rights." *Farhang v. Indian Inst. of Tech., Kharagpur,* No. 08-02658 RMW, 2010 WL 2228936, at *2 (N.D. Cal. June 1, 2010) (citing *Nakash,* 882 F.2d 1411, 1415 (9th Cir.1989). "However, if there is substantial doubt as to whether the foreign proceeding will resolve the federal action, there is no need to even undertake this multi-factor analysis." *Id.* (citing *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 913 n.7 (9th Cir.1993)).

The present case does not present "exceptional circumstances" to warrant dismissal. The first factor is neutral, as neither Germany nor California has acquired control of property. *See*

*Colorado River*, 424 U.S. at 819. The second factor slightly favors jurisdiction in California. Plaintiff is a small, California-based startup, while defendants operate across the United States and Europe. Germany may be relatively more convenient for defendants, but defendants also maintain an official office and representatives in California. Compl. ¶¶ 39-41. Many of the interactions underlying the dispute took place in California, and witnesses reside in both California and Germany. *See id.* ¶¶ 25 *et seq.* The balancing of conveniences here is split, but due to the pattern of events and relative size of the parties, this factor favors retaining jurisdiction in this District.

The third factor also favors jurisdiction in this Court. While avoiding piecemeal litigation is an underlying concern of this doctrine, "some duplication of judicial effort is the unavoidable price of preserving access to . . . federal relief." *Tovar*, 609 F.2d at 1293. Defendants brought their case first in Germany; any further litigation on the same issues is, to a certain extent, a duplication of judicial efforts. However, plaintiff declined to bring affirmative claims in German court, allowing that court to quickly dispose of the case. Adjudicating the case in this Court would thus not be unreasonably duplicative.

On the other hand, the fourth factor weighs in favor of dismissal. Defendants filed first in Germany. Defendants filed their declaratory judgment action in the German court before plaintiff filed its action before this Court. *Id.* ¶ 8. As of the date of this memo, the German court has issued a preliminary ruling but no full decision. *See* Second Mallman Decl. ¶ 16. The German case has thus progressed further than the case in this Court.

The fifth factor weighs against abstention. Plaintiff brings a series of claims under U.S. federal law and California state law. *See* Compl. The German proceeding only addresses the application of German law. *See* Second Mallman Decl., Ex. B. There are no exceptional circumstances here that would justify this Court declining jurisdiction to address the claims under U.S. and California law.

The sixth factor also weighs against abstention. The application of California and U.S. law will necessarily differ from German law. While there is no evidence that plaintiff has a European trademark registration, it does have a U.S. federal trademark registration. This significantly alters the trademark infringement analysis in the respective courts. Further, the German court ruled on

"use of submittals, the violation of duties of confidentiality, the adoption of the name 'Updatemi' and improper reproduction." Second Mallman Decl., Ex. B. Based on the order alone, this does not appear to address plaintiff's contract claims or claims under California's unfair competition law.

Weighed together, the six factors do not present the "exceptional circumstances" that would warrant abstention. Therefore, the Court DENIES the motion to dismiss on the basis of international abstention.

### B.    International Comity

In determining whether to dismiss this case on the grounds of comity, the Court weighs (1) "the strength of the United States' interest in using a foreign forum," (2) "the strength of the foreign governments' interests," and (3) "the adequacy of the alternative forum." *Cooper v. Tokyo Elec. Power*, 860 F.3d at 1205. To determine the United States' interest, the Court considers "(1) the location of the conduct in question, (2) the nationality of the parties, (3) the character of the conduct in question, (4) the foreign policy interests of the United States, and (5) any public policy interests." *Mujica*, 771 F.3d at 604. The conduct here took place in both the United States and Germany. The alleged initial meetings, pitches, and assurances to not use plaintiff's information for a purpose other than to evaluate a potential business relationship took place in the Northern District of California. Plaintiff's trademark is registered with the U.S. Patent and Trademark Office ("USPTO"), and defendants' upday app is available for sale on the U.S. Google Play store. *Id.* ¶¶ 20-24, 62. Follow-up meetings, the upday launch, and the bulk of upday downloads took place in Germany. *Id.* ¶¶ 48-58.[6] Second, plaintiff's representatives are American and Austrian, while defendants' representatives are, to the Court's knowledge, German. *See* Opp'n at 9. Third, the conduct is all commercial in nature, implicating the interests of private parties. Fourth, this case would not significantly affect the foreign policy interests of the United States. A ruling on

---

[6] The parties dispute whether the upday app is available in German only and whether it was intended for use in the United States. *See* Dkt. No. 38. However, at the motion to dismiss stage, the Court assumes the allegations in the complaint to be true. *See* Compl. ¶ 62.

Californian and U.S. law, in parallel to the German court's ruling on German law, would not cause conflict with Germany.[7] Fifth, public policy favors adjudication by this Court. The Ninth Circuit has previously recognized the U.S. interest in "preventing trademark violations." *Reebok Int'l Ltd. v. Marnatech Enterprises Inc.*, 970 F.2d 552, 556 (9th Cir. 1992). Even if this involved extraterritorial application of the Lanham Act, this would not present a problematic conflict. *Id.* Therefore, the United States has a significant interest in this suit.

Applying the same factors, the Court finds Germany also has a strong interest in this case. Part of the conduct in dispute took place in Germany, and the Axel Springer representatives are German nationals. Germany has an interest in regulating private commercial disputes in its country, which would not adversely impact its foreign relations. Germany has an interest in preventing infringement of European intellectual property just as the United States does in protecting intellectual property registered in the United States.

The Ninth Circuit has previously found Germany to be an adequate forum for commercial disputes. *See, e.g.*, *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 868 (9th Cir. 2003). There is nothing to indicate the German court here rendered the decision with fraud or violated principles of justice. *See Mujica*, 771 F.3d at 607-08. When courts have found Germany to be an inadequate forum, German law or procedure has barred claims that United States courts would allow. *See, e.g.*, *Bauman v. DaimlerChrysler Corp.*, 644 F.3d 909, 929 (9th Cir. 2011) (finding that equitable tolling and the inability to assert human rights claims against corporate defendants made Germany an inadequate forum). Here, the parties dispute whether the German court suggested that the claims based on United States or California law should be heard in the United States. Herbetz Decl. ¶¶ 12-14 (Dkt. No. 31); Second Mallman Decl. ¶ 15. However, the Court notes that the German court's order is limited to claims under German law. *See* Second Mallman Decl., Ex. B. Based on this record, it does not appear that the German court took into account

---

[7] To the Court's knowledge, the German court has only ruled on issues of law, not of fact. The Court reserves judgment on any eventual treatment of the German court's interpretation of fact. The Court also notes plaintiff's objection to defendants' *res judicata* argument raised for the first time in the reply and finds such an argument premature for the present motion. *See* Dkt. No. 38.

claims under United States or California law.  Therefore, the Court finds that this factor weighs in favor of retaining jurisdiction at this time.  In sum, the Court finds that international comity does not require dismissal of this case and DENIES the motion to dismiss on this basis.

### C.   *Forum non conveniens*

A party moving to dismiss based on *forum non conveniens* bears the burden of showing oppression that far outweighs the plaintiff's convenience.  *Ravelo*, 211 F.3d at 514.  The moving party must show "(1) that there is an adequate alternative forum, and (2) that the balance of private and public interest factors favors dismissal."  *Dole Food v. Watts*, 303 F.3d at 1118.

Defendants failed to meet that burden.  First, the adequacy of the German forum is unclear.  The German court seemingly did not rule on claims under United States and California law, and the analysis for at least the trademark infringement claims will be different in the United States because plaintiff has a registered trademark in the United States.  Second, the balance of factors does not tilt in favor of dismissal.  Defendants argue that "most witnesses and evidence continue to be located in Germany and Austria."  Reply at 12 (Dkt. No. 34).  Yet defendants do not acknowledge that they established a Palo Alto office and hired Silicon Valley-based staff to make partnerships with companies like the plaintiff.  *See* Compl. ¶ 25.  Further, they do not address plaintiff's allegations that the assurances not to use plaintiff's information for a purpose other than evaluating a potential business relationship, which are at the crux of this case, occurred in California.  *See, e.g.*, *id.* ¶¶ 31-34, 40-43.  These private factors weigh in favor of this forum.  The public factors each party cites—the respective countries' interests in ruling on local business disputes—weigh equally at best and thus do not tip the scales in favor of dismissal.  For these reasons, the Court DENIES the motion to dismiss under *forum non conveniens*.

## II.   FRCP 12(b)(6) Issues

Defendants also argue that if the Court declines to defer to the German Litigation, the complaint should be dismissed in its entirety for failure to state a claim.  Mot. at 9.

## A. Breach of Implied-in-Fact Contract (Count I)

Plaintiff alleges a claim for breach of an implied-in-fact contract. Compl. ¶¶ 76-93. "A cause of action for breach of implied contract has the same elements as does a cause of action for breach of contract, except that the promise is not expressed in words but is implied from the promisor's conduct." *Yari v. Producers Guild of Am., Inc.*, 73 Cal. Rptr. 3d 803, 811 (Ct. App. 2008). The "essential elements" of a breach of contract claim are: "(1) the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to plaintiff." *Reichert v. Gen. Ins. Co. of Am.*, 68 Cal. 2d 822, 830 (1968).

Defendants argue that plaintiff failed to plead the existence of a contract, including a meeting of the minds and consideration. Mot. at 14. "The existence and terms of an implied contract are manifested by conduct . . . Accordingly, a contract implied in fact 'consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words.'" *Retired Employees Assn. of Orange Cty., Inc. v. Cty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (internal citations omitted); *see also* Cal. Civ. Code §§ 1619, 1621.

Plaintiff alleges that starting in February 2013, defendants' representatives and plaintiff met on several occasions to discuss a possible investment or partnership regarding plaintiff's mobile app updatemi®. During the first formal pitch meeting, plaintiff allegedly explained that it "was providing information about updatemi® with the specific understanding that the information would only be used by Axel Springer to evaluate a possible investment or joint venture," and Diekmann, an Axel Springer representative, "agreed to use the information only for that purpose." Compl. ¶ 31. Similar meetings and statements occurred throughout 2014. *See id.* ¶¶ 32-56. Plaintiff also alleges, "As consideration for sharing such information, ideas, and materials with Axel Springer, Hirschbrich and Updateme repeatedly conveyed that they were doing so exclusively for purposes of enabling a partnership with or investment by Axel Springer in the updatemi® application." *Id.* ¶ 82. It further alleges that "Axel Springer agreed to expend time and resources evaluating the prospective partnership and investment." *Id.* ¶ 83. The complaint also states that industry standard "provides that information, ideas and materials shared as part of a

pitch or similar presentation to investors or partners will only be used for purposes of evaluating that investment or business opportunity," and defendants acknowledged this standard. *Id.* ¶ 87.

Defendants argue that plaintiff's allegations show only preliminary negotiations, which "are not the functional equivalent of a valid, subsisting agreement." *Kruse v. Bank of Am*, 202 Cal. App. 3d 38, 58 (1998). The Court agrees that the parties were in preliminary negotiations regarding a potential investment or partnership. But that is not the basis of plaintiff's breach of implied contract claim. Rather, the alleged agreement was for plaintiff to provide information about its app in exchange for defendants' agreement not to use that information for any purpose other than evaluating a potential business relationship. This is unlike defendants' cited case *Desny v. Wilder*, 46 Cal. 2d 715 (1956), where the plaintiff conveyed his idea for a story, but did not obtain a promise to pay (or any other promise) before the conveyance. *Id.* at 740. Here, defendants allegedly did make a promise to plaintiff before plaintiff divulged any specific information about its app idea. The allegations detailed above are sufficient to support a reasonable inference that there was an understanding between plaintiff and defendants that plaintiff's information would not be used for any purpose other than evaluating a potential business relationship. *See Competitive Techs. v. Fujitsu Ltd.*, 286 F. Supp. 2d 1118, 1146 (N.D. Cal. 2003) (Spero, J.).[8]


### B.    Trademark Infringement (Counts II and III)

Plaintiff's second and third claims allege trademark infringement under the Lanham Act and California common law. "The Lanham Act is the federal trademark and unfair competition statute." *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 966 (9th Cir. 2016). "To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectable ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." *Rearden LLC v. Rearden Commerce, Inc.*, 683 F.3d 1190, 1202 (9th Cir. 2012)

---

[8] Defendants have also argued that "each and every idea that Plaintiff contends it shared with Defendants was available elsewhere." Reply at 5. But whether this is true and whether defendants actually created their app based on plaintiff's information are questions of fact not suitable for resolution on a motion to dismiss.

(internal quotation marks omitted). A plaintiff must also meet "a threshold 'use in commerce' requirement." *Id.* at 1203. Plaintiff's state law trademark infringement claim is "subject to the same legal standards as [its] Lanham Act trademark claim." *Id.* at 1221.

### 1. Extraterritorial Application of the Lanham Act

Plaintiff bases its claim for a Lanham Act violation on domestic and foreign conduct by defendants. "The Lanham Act applies extraterritorially if: (1) the alleged violations . . . create some effect on American foreign commerce; (2) the effect [is] sufficiently great to present a cognizable injury to the plaintiffs under the Lanham Act; and (3) the interests of and links to American foreign commerce [are] sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority." *Trader Joe's*, 835 F.3d at 969 (alterations in original). Defendants argue that plaintiff does not allege that defendants are using plaintiff's marks in the U.S. or how defendants' "alleged activity affects commerce in the U.S." Mot. at 11.

The first two prongs require plaintiff to allege that defendants infringe its trademarks "(1) in a way that affects American foreign commerce, and (2) causes [plaintiff] a cognizable injury under the Lanham Act." *Trader Joe's*, 835 F.3d at 969. Here, although plaintiff bases its claims in part on foreign conduct by defendants, it also alleges that defendants make the allegedly infringing app "available for download in the United States from the Google Play store online." Compl. ¶ 62; *see id.* ¶ 98 (alleging the upday app is "available for download in the United States and elsewhere"). "This domestic economic activity weighs in favor of applying the Lanham Act to [defendants'] conduct." *Trader Joe's*, 835 F.3d at 972. Additionally, plaintiff alleges that defendants' "infringing conduct affects [plaintiff's] U.S. foreign commerce" by: (1) prohibiting plaintiff's expansion into foreign countries where the upday app is pre-installed on Samsung Galaxy devices; (2) diverting customers from updatemi® to upday; and (3) decreasing the value of plaintiff's American-held trademarks. *Id.* ¶¶ 104-106. Plaintiff also alleges that defendants "directed their infringing conduct from the United States," and caused plaintiff the "loss of current and prospective business opportunities in the United States and elsewhere[.]" *Id.* ¶¶ 107-108. "A defendant's foreign activities need not have a substantial or even significant effect on American

commerce, rather, 'some effect' may be sufficient." *Trader Joe's*, 835 F.3d at 969. There are "myriad ways" to show some effect on American commerce, including allegations that defendants' conduct causes plaintiff "reputational harm that could decrease the value of its American-held trademarks." *Id.* at 975. These allegations sufficiently plead the first two *Trader Joe's* prongs.

However, it does not appear that plaintiff's allegations meet the third prong, which requires courts to consider: "[1] the degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business of corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad." *Id.* at 972-73. Plaintiff asserts that defendants' product is available in the United States, but does not allege the "significance of effects," such as number of downloads or popularity in the United States in relation to plaintiff's product.[9] Because plaintiff failed to properly plead all three prongs, the Court GRANTS the motion to dismiss the trademark infringement theory to the extent it is based on foreign conduct, with leave to amend.

### 2. Use of Plaintiff's Trademark & Likelihood of Confusion

Defendants argue that plaintiff has not alleged that defendants used plaintiff's mark in commerce or that any use is likely to cause customer confusion. Mot. at 11. In particular, defendants assert that because they used the "entirely distinct mark, 'upday,'" instead of "updatemi," they did not use plaintiff's mark. Mot. at 12. Defendants also contend that even if

---

[9] Plaintiff objects that defendants raised the third prong as an issue only in its reply brief. Objections to Defendants' New Reply Evidence at 1 (Dkt. No. 38). Plaintiff contends that it "could easily rebut the charge," but in both the objection and hearing, plaintiff failed to point to specific allegations in the complaint to meet the seven factors. The Court OVERRULES plaintiff's objection and grants plaintiff leave to amend the complaint to properly plead extraterritorial application of the Lanham Act.

"updatemi" and "upday" are similar, courts typically find that a plaintiff fails to show use in when the marks are also English words. *Id.* (citing *Playboy Enters., Inc. v. Netscape Commc'n. Corp.*, 55 F. Supp. 2d 1070, 1073 (C.D. Cal. 1999).[10] These arguments are unpersuasive. Although similar to the word "update," "upday" and "updatemi" are not English words. Plaintiff has alleged both direct use of its marks by defendants in the United States (as evidenced by the app's availability on the U.S. Google Play store)[11] and extraterritorial use (as evidenced by the app's availability in several European countries). *See* Compl. ¶¶ 98, 103; *see also* Opp'n 16-17.

Defendants also assert that plaintiff's allegations of likelihood of confusion are "conclusory" and insufficiently plead the relevant factors. Mot. at 12-13. In assessing likelihood of confusion, courts in the Ninth Circuit consider eight non-exclusive factors: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines." *Abercrombie & Fitch Co. v. Moose Creek, Inc.*, 486 F.3d 629, 633 (9th Cir. 2007) (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)). "Although some factors—such as the similarity of the marks and whether the two companies are direct competitors—will always be important, it is often possible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." *Theta Chi Fraternity, Inc. v. Leland Stanford Junior Univ.*, 212 F. Supp. 3d 816, 824 (N.D. Cal. 2016) (Whyte, J.) (quoting *Brookfield Commc'ns, Inc. v. W. Coast Ent't Corp.*, 174 F.3d 1036, 1054 (9th Cir. 1999)).

Defendants correctly argue that plaintiff did not explicitly plead each of the *Sleekcraft* factors. *See* Mot. at 12. However, plaintiff did address the majority of the factors. Plaintiff claims: (i) they have a strong mark, Compl. ¶¶ 96-97; (ii) both products are news aggregation

---

[10] Defendants also argue that trademarks containing "update" are not unique because the USPTO's database contains 807 records of trademarks containing "update." Reply at 6 n.9; Declaration of Elizabeth Skeen ¶ 2 (Dkt. No. 34-1). The Court declines to consider this argument on a motion to dismiss pursuant to Rule 12(b)(6), as it refers to facts outside of the complaint.

[11] The Court DENIES plaintiff's request for judicial notice of www.update.com/en. *See* Opp'n at 17. This request is unnecessary as the complaint sufficiently alleges that the upday app is available in the United States.

apps, *id.* ¶ 100; (iii) the upday mark is confusingly similar to the updatemi mark in appearance, sound, and meaning, *id.* ¶ 99; (iv) both apps are marketed through Google Play, *id.* ¶ 101; (v) consumers are unlikely to take care in distinguishing between the pre-downloaded apps or apps on the Google Play store, *id.* ¶ 103; and (vi) defendant intentionally copied the updatemi mark, *id.* ¶ 102. These allegations sufficiently allege a likelihood of confusion.

### C. Fraud and Promissory Estoppel (Counts IV and V)

Plaintiff's fourth and fifth counts respectively assert claims for fraud and promissory estoppel.[12] To state a claim for fraud, a plaintiff must allege: "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of Cal.*, 203 P.3d 1127, 1135 (Cal. 2009). In addition, under Federal Rule of Civil Procedure 9(b), a plaintiff must "state with particularity the circumstances constituting fraud," including "the who, what, when, where, and how of the misconduct charged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124-25 (9th Cir. 2009). "The required elements for promissory estoppel in California are . . . (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) his reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Laks v. Coast Fed. Sav. & Loan Assn.*, 60 Cal. App. 3d 885, 890-91 (1976) (citing *Thomson v. Internat. Alliance of Stage Employees*, 232 Cal. App. 2d 446, 454 (1965)). The promise must be "definite enough that a court can determine the scope of the duty[,] and the limits of performance must be sufficiently defined to provide a rational basis for the assessment of damages." *Garcia v. World Sav.*, *FSB*, 107 Cal. Rptr. 3d 683, 696 (Ct. App. 2010).

Defendants argue that the fraud and promissory estoppel claims are based on vague allegations about statements made by various Axel Springer representatives. Mot. at 13. The

---

[12] In its opposition brief, plaintiff frames this claim as one for "promissory fraud," which "may lie where a defendant fraudulently induces the plaintiff to enter into a contract." Opp'n at 20; *see Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Court disagrees. Plaintiff alleges that defendants repeatedly promised that they would not use the information shared by plaintiff "for any purpose other than in connection with an investment in or partnership with" plaintiff. Compl. ¶ 121. Between February 2013 and November 2014, Axel Springer representatives, including Diekmann, Waitz, Gorbunow, and Goesche, prompted plaintiff to provide additional information "as part of evaluating an investment or partnership opportunity relating to the updatemi® app." *Id.* ¶¶ 121-128. In March 2014, one person working for Axel Springer "represented to [plaintiff] that Axel Springer was not working on a product that is competitive with updatemi® or a news aggregation service that uses any of the information, ideas or materials provided by [plaintiff]." *Id.* ¶ 124.

Plaintiff also alleges that these statements were "knowingly and intentionally false" because "by at least early 2014, Axel Springer was already using the information solicited and received relating to updatemi® in order to create a competing product without [plaintiff]." *Id.* ¶ 129. Plaintiff further alleges that "Axel Springer's representatives knew that Axel Springer was inviting [plaintiff] to continue providing information on their news aggregation platform—not for the purposes of investing in or partnering with [plaintiff]—but for creating a competing product to the exclusion of [plaintiff]." *Id.* ¶ 130. This sufficiently pleads "what is false or misleading about [the] statement[s], and why [they] are false." *Perez v. Wells Fargo Bank, N.A.*, No. 11-cv-2279-JCS, 2011 WL 3809808, at * 17 (N.D. Cal. Aug. 29, 2011) (internal citations omitted); *see also Advanced Transit Dynamics, Inc. v. Ridge Corp.*, No. 15-cv-1877, 2016 WL 6804918, at *7 (C.D. Cal. Feb. 1, 2016) (finding fraud and promissory estoppel claims sufficiently pled where the plaintiff alleged the defendant's promise not to disclose or competitively use information received was made with the intent to deceive the plaintiff into disclosing its confidential information). Plaintiff has adequately identified the alleged misrepresentations "so that defendants can prepare an adequate answer." *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

Defendants also argue that plaintiff's damages allegations are conclusory and insufficient to plead fraud or promissory estoppel. Mot. at 14. In particular, they argue that plaintiff fails to explain the causal connection between plaintiff's alleged damages and defendants' alleged misrepresentations. *Id.* at 15. However, the complaint alleges that defendants "used the

information provided by [plaintiff] to create its own upday app according to the business plans, designs, and prototypes shared by [plaintiff]." Compl. ¶ 68. As a result, plaintiff alleges that defendants interfered with plaintiff's expansion into foreign countries, and diverted customers to upday. *Id.* ¶¶ 104-105. Plaintiff also alleges that it suffered loss of business opportunities, as well as future users, sales, and profits. *Id.* ¶¶ 108-109. These allegations sufficiently plead damages resulting from defendants' alleged conduct.

### D.  Unfair Competition (Count VI)

Plaintiff's sixth cause of action is for violation of California's Unfair Competition Law ("UCL"), which prohibits "unlawful, unfair or fraudulent" business acts or practices. *See* Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999). Defendants argue that plaintiff did not allege "instances of unfair, illegal, or deceptive business practices" by defendants. Mot. at 16. Where a plaintiff has sufficiently pled a claim for trademark infringement, its allegations are also sufficient to state a UCL claim. *See Airwair Int'l Ltd. v. Vans, Inc.*, 2013 WL 3786309, at *7 ("[T]he analysis for California unfair competition claims under [the UCL] is the same as the analysis under the Lanham Act."); *Cel–Tech Commc'ns*, 973 P.2d at 540 ("By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable."). As discussed above, plaintiff sufficiently pled that it has a registered trademark, that defendants used plaintiff's mark in commerce, and that such use is likely to cause confusion. These allegations likewise support plaintiff's UCL claim.

Defendants also argue that plaintiff lacks standing to bring a UCL claim because it does not allege an economic injury that resulted from defendants' alleged business practices. Mot. at 15. To bring a claim under the UCL, a plaintiff must allege that it has "suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. As discussed above, plaintiff has asserted throughout its complaint injuries that resulted from defendants' alleged behavior. For instance, it alleges that its "injuries include, at least, the loss of

current and prospective business opportunities in the United States and elsewhere, as upday is pre-installed on Samsung Galaxy devices, preventing updatemi® from reaching the market for Samsung Galaxy users." Compl. ¶ 108. It also alleges that it "lost future users of the updatemi® application who would use the pre-installed upday application rather than updatemi®," and that its damages include "lost sales, lost profits, [and] lost business opportunities[.]" *Id.* ¶¶ 108-109. These allegations are sufficient to plead standing under the UCL.

### E.    Identification of Defendants

Defendants' motion to dismiss also raises the issue of the complaint's lack of clarity on which defendants are implicated by the various allegations. *See, e.g.*, Mot. at 6:18-19, 13 n.12. The Court is concerned with this lack of clarity, but notes that the parties represented at the hearing that they are discussing a potential stipulation to limit discovery on the distinctions between defendant entities. Therefore, the Court GRANTS the motion to dismiss with respect to the six claims, but grants plaintiff leave to amend to either identify the appropriate defendant(s) for each claim or explain the reason why plaintiff is unable to do so.

### CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby DENIES the motion to dismiss in deference to the German litigation and GRANTS the motion to dismiss all six claims with leave to amend.

**IT IS SO ORDERED**.

Dated:  November 27, 2017

_____
SUSAN ILLSTON
United States District Judge