# Exhibit A

1   PETER R. BOUTIN, CASB No. 65261
    peter.boutin@kyl.com
2   CHRISTOPHER A. STECHER, CASB No. 215329
    christopher.stecher@kyl.com
3   KEESAL, YOUNG & LOGAN
    A Professional Corporation
4   450 Pacific Avenue
    San Francisco, California  94133
5   Telephone:     (415) 398-6000
    Facsimile:     (415) 981-0136
6

7

8   TIMOTHY P. HARKNESS (*pro hac vice*)
    timothy.harkness@freshfields.com
9   PETER JAFFE (*pro hac vice*)
    peter.jaffe@freshfields.com
10  ELIZABETH SKEEN (*pro hac vice*)
    elizabeth.skeen@freshfields.com
11  FRESHFIELDS BRUCKHAUS DERINGER US LLP
    601 Lexington Avenue, 31st Floor
12  New York, New York 10022
    Telephone:     (212) 277-4000
13  Facsimile:     (212) 277-4001

14  Attorneys for Defendants
    AXEL SPRINGER SE, AXEL SPRINGER SERVICES INC., AXEL
15  SPRINGER DIGITAL VENTURES GMBH and UPDAY GMBH &
    CO KG.

16              **UNITED STATES DISTRICT COURT**

17              **NORTHERN DISTRICT OF CALIFORNIA**

18

19

20  UPDATEME INC., a Delaware Corporation,      )   Case No. 3:17-cv-5054-SI
                                                )
21                               Plaintiff,     )   *Action Filed:  August 31, 2017*
                                                )
22              vs.                             )   **DEFENDANTS' SECOND AMENDED**
                                                )   **ANSWER TO FIRST AMENDED**
23  AXEL SPRINGER SE, a German societas         )   **COMPLAINT**
    Europaea; AXEL SPRINGER SERVICES INC.,      )
24  a Delaware Corporation; AXEL SPRINGER       )
    DIGITAL VENTURES GMBH, a German             )
25  Gesellschaft mit beschrankter Haftung; and  )
    UPDAY GMBH & Co. KG, a German               )
26  Kommanditgesellschaft,                      )
                                                )
27                               Defendants.    )
                                                )
28

- 1 -

**ANSWERS TO COMPLAINT AND AFFIRMATIVE DEFENSES**

Defendants Axel Springer SE, Axel Springer Services Inc., Axel Springer Digital Ventures GmbH, and upday GmbH & Co. KG[1] ("Defendants") answer the First Amended Complaint of Updateme Inc. ("Plaintiff" or "Updateme") dated November 30, 2017 (the "Complaint") as set forth below.  Unless specifically admitted, Defendants deny each allegation of the Complaint.

**ANSWERS TO SECTION TITLED "NATURE OF ACTION"**

1.      Defendants admit that Updateme purports to state claims related to fraud, breach of contract, and trademark infringement.  Defendants deny the remaining allegations in Paragraph 1, including the implication that Defendants have made any unlawful or fraudulent use of Updateme's alleged trademarks.

2.      Defendants deny the allegations of Paragraph 2.

3.      Defendants admit that they did not invest in updatemi® or partner with Mr. Hirschbrich to launch an application that could benefit both Updateme and Axel Springer, and that the upday app is called "upday."  Defendants deny the remaining allegations in Paragraph 3.

4.      Defendants deny the allegations of Paragraph 4, except admit that Updateme purports to seek, among other things, injunctive relief halting Defendants' use of the upday logo and name, and damages and lost profits.

**ANSWERS TO SECTION TITLED "PARTIES"**

5.      Defendants admit that Updateme is a Delaware corporation.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity that Updateme's principal place of business is at 3790 El Camino Real # 1031, Palo Alto, CA 94306, which appears to be a commercial post office box called "Green Mail," and therefore deny the allegations in Paragraph 5.

6.      Defendants admit the allegations contained in Paragraph 6.

7.      Defendants admit the allegations contained in Paragraph 7, except aver that the offices of Axel Springer Services are on the 12th floor.

---

[1] Defendant upday joins in the Answer without prejudice to its objections to this Court's exercise of personal jurisdiction over it.  *See generally* Order Denying without Prejudice Defs.' Mot. to Dismiss for Lack of Personal Jurisdiction (ECF No. 96).

8.     Defendants admit the allegations contained in Paragraph 8.

9.     Defendants admit that upday is a Kommanditgesellschaft with its principal place of business at Axel-Springer-Strasse 65, Berlin, Germany, that a Kommanditgesellschaft is a public company registered in accordance with the corporate law of Germany, and that upday is a wholly owned subsidiary of Axel Springer SE.  Defendants' counsel's prior statement that upday is an indirect wholly owned subsidiary of Axel Springer SE was in error; upday is in fact a direct subsidiary of Axel Springer SE.

10.     Paragraph 10 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 10.

11.     Defendants admit the allegations contained in Paragraph 11.

12.     The term "complete control" as used in Paragraph 12 is ambiguous.  To the extent that the term "complete control" is meant to convey that Axel Springer SE exercises operational control over Defendants ASDV, upday and Axel Springer Services *without* the observance of corporate formalities appropriate under the corporate laws governing Defendants, Defendants deny the allegations of Paragraph 12.

13.     Defendants deny the allegations of Paragraph 13, except admit that Defendants ASDV, upday and Axel Springer Services report consolidated earnings through Defendant Axel Springer SE and also report earnings on a standalone basis.  Defendants further admit that Defendant ASDV pays taxes through Axel Springer SE.

14.     Defendants deny the allegations of Paragraph 14, except admit that Axel Springer SE classifies its business activities, for some but not all purposes, into three operating segments, namely Classified Media (formerly known as Classified Ad Models), News Media (formerly known as Paid Models), and Marketing (formerly known as Models Models), and that there is also a Services/Holding segment.

15.     Defendants admit the allegations of Paragraph 15, but state that the "Paid Models" segment is now referred to as "News Media."

16.     Defendants deny the allegations of Paragraph 16, except admit that upday operates the business relating to the upday mobile app.

17.     Defendants deny the allegations of Paragraph 17, except admit that upday GmbH & Co. KG purchases certain intra-group services from other members of the Axel Springer group of companies.

18.     Defendants deny the allegations of Paragraph 18.

19.     Defendants deny the allegations of Paragraph 19.

20.     Defendants deny the allegations of Paragraph 20.

21.     Defendants deny the allegations of Paragraph 21, except admit that Defendants Axel Springer SE, ASDV, and upday have participated in various business pursuits in which other Defendants also have participated, as is typical of a large multinational corporation with multiple subsidiaries.

22.     Defendants admit the existence of quoted excerpts contained in Paragraph 22, but deny that these excerpts accurately reflect the totality of the quoted press releases and refer to the documents themselves for their content, which speak for themselves.

23.     Defendants admit that Defendant Axel Springer Services provides intra-group supporting services to other Axel Springer-related entities, including for Axel Springer SE and ASDV. Defendants deny that Axel Springer Services does so for upday.

24.     Defendants admit that Axel Springer SE, ASDV, and upday share a business address insofar as they all maintain addresses, registered in the commercial register, in Axel Springer SE's headquarters building in Berlin, Germany.  Defendants deny any implication that Axel Springer SE, ASDV, and upday share precisely the same offices.  Defendants further deny that Axel Springer Services shares its business location with the other Defendants.

25.     Defendants deny the allegations of Paragraph 25, except admit that certain Defendants share certain officers and directors.

26.     Defendants admit that Mr. Jens Müffelmann was the Chief Executive Officer of Defendant ASDV. Defendants deny the remaining allegations contained in Paragraph 26, except admit that Mr. Müffelmann has previously held senior positions at certain Axel Springer SE portfolio companies.

27.     Defendants admit that certain officers and directors of Defendants Upday, ASDV and Axel Springer Services report to certain officers and directors of Defendant Axel Springer SE, observing corporate formalities under the corporate laws applicable to those entities.

28.     Defendants admit the allegations contained in Paragraph 28.

29.     Defendants deny the allegations of Paragraph 29.

30.     Defendants deny the allegations of Paragraph 30, including both the premise that the Defendants have hidden or are hiding behind their different corporate veils, and the characterization of the Defendants' activities as inequitable.

31.     Defendants admit that counsel for the parties have discussed a possible stipulation whereby Defendants would be treated as the same entity for purposes of this litigation and admit that counsel for the Defendants have suggested they are considering such a stipulation, but deny that Defendants have yet to confirm whether they will so stipulate.  Subsequent to Updateme's filing of its Amended Complaint, Defendants declined to enter into a proposed stipulation offered by Updateme, but have offered to consider other proposals in the future.  Defendants admit that Updateme has purported to require further discovery to specify the exact relationships among the various defendants, as well as the relationship between and among the individuals and Axel Springer companies allegedly engaged in conduct alleged by Updateme.  Defendants admit that there are hundreds of companies in the Axel Springer group of companies.  Defendants are without knowledge or information sufficient to form a belief about the allegation that Updateme may add additional defendants, and therefore deny the same.

**ANSWERS TO SECTION TITLED "JURISDICTION"**

32.     Defendants admit the allegations contained in Paragraph 32.

33.     Defendants deny the allegations of Paragraph 33, except admit that this Court has personal jurisdiction over defendants Axel Springer SE and Axel Springer Services, Inc. and that Axel Springer Services is registered to do business in California.

**ANSWERS TO SECTION TITLED "VENUE"**

34.     Defendants deny the allegations of Paragraph 34, except admit that venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2).

## ANSWERS TO SECTION TITLED "INTRADISTRICT ASSIGNMENT"

35.     Defendants admit the allegations contained in Paragraph 35, except are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegation regarding Updateme's alleged headquarters, and therefore deny the same.

## ANSWERS TO SECTION TITLED "FACTUAL BACKGROUND"

36.     Defendants admit that Updatemi is a mobile news-aggregation application that is called Updatemi, but are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 36, and therefore deny the same.

37.     Defendants admit the allegations of Paragraph 37.

38.     Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 38, and therefore deny the same.

39.     Defendants admit that the image contained at Paragraph 41 of the Amended Complaint shows what appears to be a sample Updatemi app home screen, containing stories that may be tailored for that user's topics and including what appears to be a two-line headline and a six-point bullet-point summary, but deny knowledge or information sufficient to determine whether the sample home screen at Paragraph 41 is representative of any past or current versions of the Updatemi app.

40.     Defendants admit that the image contained at Paragraph 41 of the Amended Complaint shows what appears to be a sample Updatemi app home screen, containing an Update, Term ("Politik International"), summary of the Update, and bullet-points providing additional details, but deny knowledge or information sufficient to determine whether the sample home screen at Paragraph 41 is representative of any past or current versions of the Updatemi app.

41.     Defendants admit that Updateme Inc. is listed as the registrant for the marks under U.S. Registration Nos. 4,777,340 and 4,777,341.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 41, and therefore deny the same.

42.     Defendants admit the allegations contained in Paragraph 42, except are without knowledge or information sufficient to form a belief as to the validity of the mark registered under

U.S. Registration No. 4,777,341 and as to the truth or falsity of allegations relating to its current ownership.

43.    Defendants admit the allegations contained in Paragraph 43, except are without knowledge or information sufficient to form a belief as to the validity of the mark registered under U.S. Registration No. 4,777,340 and as to the truth or falsity of allegations relating to its current ownership.

44.    Defendants deny the description of Updateme's marks as "distinctive," and are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 44, and therefore deny the same.

45.    Defendants admit the allegations in Paragraph 45, except that are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding Updateme's plans for the future, and therefore deny the same.

46.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of allegations contained in Paragraph 46, and therefore deny the same.

47.    Axel Springer admits that Axel Springer representatives arrived in 2012 and that certain materials characterized the representatives as "Axel Springer in Silicon Valley."  Axel Springer denies that these representatives categorically held themselves at out representing "Axel Springer" without ever distinguishing the entity with which they were associated.  Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 47, and therefore deny the same.

48.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 48, and therefore deny the same.

49.    Defendants admit the allegations contained in Paragraph 49, except deny that Mr. Hirschbrich held himself out as a representative of Updateme at that meeting.

50.    Defendants admit the allegations of Paragraph 50, but deny any implication that Mr. Diekmann held a title at Bild GmbH & Co KG.

51.    Defendants deny the allegations of paragraph 51, except admit that Mr. Würtenberger is presently the CEO of upday, admit Mr. Würtenberger has held previous positions at Axel Springer

SE and admit the existence of certain video excerpts cited in Paragraph 51.  Defendants further deny that these excerpts accurately reflect either the totality or the context of the underlying video and refer to the video for its content, which speaks for itself.

52.    Defendants admit that Mr. Diekmann and Mr. Würtenberger, along with another Axel Springer representative, were sent to the Silicon Valley by Mathias Döpfner, CEO of Axel Springer SE.  Defendants admit the existence of the quoted excerpts in Paragraph 52, but deny that these excerpts accurately reflect either the totality or the context of the cited *New York Times* article and refer to the article for its content, which speaks for itself.

53.    Defendants deny the allegations of Paragraph 53, except admit that Mr. Diekmann and Mr. Würtenberger conveyed that Axel Springer was looking to learn from and perhaps to partner with companies in Silicon Valley.

54.    Defendants deny the allegations of Paragraph 54, except admit Mr. Diekmann and Mr. Würtenberger communicated that Axel Springer was looking to learn from and perhaps to partner with companies in Silicon Valley.

55.    Defendants deny the allegations of Paragraph 55.

56.    Defendants deny the allegations of Paragraph 56, except admit that Mr. Hirschbrich and Mr. Diekmann met on or about February 14, 2013.

57.    Defendants deny the allegations of Paragraph 57.

58.    Defendants deny the allegations of Paragraph 58.

59.    Defendants deny the allegations of Paragraph 59.

60.    Defendants deny the allegations of Paragraph 60.

61.    Defendants deny the allegations of Paragraph 61.

62.    Defendants deny the allegations of Paragraph 62.

63.    Defendants deny the allegations of Paragraph 63.

64.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 64, and therefore deny the same.

65.    Defendants admit the allegations contained in Paragraph 65, except (i) deny the allegation that Mr. Waitz was managing director of Defendant ASDV and (ii) are without knowledge

or information sufficient to form a belief as to the truth or falsity of whether Mr. Waitz was the Axel Springer Silicon Valley manager referenced by Mr. Diekmann in the allegations previously referenced at Paragraph 61, and therefore deny the same.

66.    Defendants deny the allegations of Paragraph 66, except admit that Mr. Hirschbrich met with Mr. Waitz and Mr. Gorbunow on or about March 18, 2014.

67.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 67, and therefore deny the same.

68.    Defendants admit that, following the March 18, 2014 meeting, Mr. Gorbunow emailed Mr. Hirschbrich.  Defendants deny Plaintiff's characterization of the content of the email and refer to the email for its contents, which speaks for itself.  Defendants deny the remaining allegations in Paragraph 68.

69.    Defendants deny the allegations of Paragraph 69.

70.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 70, and therefore deny the same.

71.    Defendants deny the allegations of Paragraph 71, except admit that Mr. Waitz invited Mr. Hirschbrich to a barbecue.

72.    Defendants deny the allegations of Paragraph 72.

73.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 73, and therefore deny the same.

74.    The allegations concerning "cards" in Paragraph 74 are vague and ambiguous, given that the term "cards" is used in a variety of different ways to describe a variety of different user interfaces. To the extent that cards refer to a single page of content that can be navigated through swipe gestures, as defined in the official Android design standards, Defendants deny the allegations of Paragraph 74, except admit that Mr. Goesche and Mr. Hirschbrich met, for personal reasons, at a restaurant in Berlin on or about October 9, 2014 and that Mr. Hirschbrich displayed some version of the updatemi app on his personal mobile phone (but deny that it employed a cards interface as defined above).

75.    Defendants deny the allegations of Paragraph 75.

76.     Defendants deny the allegations of Paragraph 76.

77.     Defendants admit that Mr. Hirschbrich and Mr. Waitz met over lunch on or about November 7, 2014, but deny the remaining allegations of Paragraph 77, including that the alleged meeting concerned next steps for a potential investment or partnership.

78.     Defendants deny the allegations of Paragraph 78, except admit that Mr. Hirschbrich emailed Mr. Waitz general details about the Updatemi app in early November 2014.

79.     Defendants admit that Mr. Hirschbrich emailed Mr. Goesche in early November 2014 and that Mr. Goesche indicated by email that he would show the app to Daniel Böcking.  Defendants deny that Mr. Goesche stated that Mr. Reichelt was interested in learning more about Updatemi. Defendants deny that Messrs. Böcking and Reichelt, neither of whom ever met Mr. Hirschbrich, "held themselves out as representatives of 'Axel Springer.'"

80.     Defendants admit that Mr. Goesche sent Mr. Hirschbrich Facebook messages stating that Updatemi had "aroused interest in Daniel Böcking" and that the "iron is currently hot," but deny Plaintiff's characterization of these messages or that they allegedly represented Defendants' interest in the Updatemi app.  Defendants further deny that Mr. Goesche suggested that a partnership or investment may be imminent.

81.     Defendants admit that Mr. Waitz emailed Mr. Hirschbrich on November 16, 2014. Defendants deny Plaintiff's characterization of the content of the email and refer to the email for its contents, which speaks for itself.

82.     Defendants admit that Mr. Goesche emailed Mr. Hirschbrich on November 18, 2014. Defendants deny Plaintiff's characterization of the content of the email and refer to the email for its contents, which speaks for itself.

83.     Defendants admit that Mr. Goesche mentioned the Updatemi app to Mr. Bourmer. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 83, and therefore deny the same.

84.     Defendants deny the allegations of Paragraph 84.

85.    Defendants admit the existence of the quoted excerpts in Paragraph 85, but deny that these excerpts accurately reflect the totality of the September 1, 2015 press release and refer to the document for its content, which speaks for itself.

86.    Defendants deny the allegations in Paragraph 86, except admit that upday has, since its release, used the smiley logo shown at Paragraph 86.

87.    Defendants admit the allegations contained in Paragraph 87.

88.    Defendants admit the allegations contained in Paragraph 88.

89.    Defendants deny the allegations of Paragraph 89, except admit that upday is offered for download on European versions of the Google Play store, limited to sixteen European countries.

90.    Defendants admit the existence of quoted excerpts in Paragraph 90, but deny that these excerpts accurately reflect the totality of the 2016 Annual Report's content related to upday and refer to the document itself for its content, which speaks for itself.

91.    Defendants admit that users of upday can also select individual Categories in which they are interested, and upday will provide specific news on those categories to users.

92.    Defendants admit the existence of quoted excerpts contained in Paragraph 92, but deny that these excerpts accurately reflect the totality of the 2016 Annual Report's content related to upday and refer to the document itself for its content, which speaks for itself.

93.    Defendants admit the existence of quoted excerpts contained in Paragraph 93, but deny that these excerpts accurately reflect the totality of the underlying press release and refer to the document itself for its content, which speaks for itself.

94.    The allegations concerning "cards" in Paragraph 94 are vague and ambiguous, given that the term "cards" is used in a variety of different ways to describe a variety of different user interfaces.  To the extent that cards refer to a single page of content that can be navigated through swipe gestures, as defined in the official Android design standards, Defendants admit that upday uses "cards" under this meaning.  Defendants admit that headings and bullet points are used for news items shown on the upday app, but deny that bullet points are part of all news items shown on the upday app.

95.    Defendants deny the allegations of Paragraph 95.

DEFENDANTS' FIRST AMENDED ANSWER TO SECOND AMENDED COMPLAINT — CASE NO. 3:17-cv-5054-SI

96.    Defendants deny the allegations of Paragraph 96.

97.    Defendants deny the allegations of Paragraph 96.

98.    Defendants deny the allegations of Paragraph 98.

99.    Defendants deny the allegations of Paragraph 99.

100.    The allegations concerning "cards" in Paragraph 100 are vague and ambiguous, given that the term "cards" is used in a variety of different ways to describe a variety of different user interfaces.  To the extent that cards refer to a single page of content that can be navigated through swipe gestures, as defined in the official Android design standards, the Updatemi app does not use "cards," and Defendants therefore deny the allegations of Paragraph 100.

101.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 101, and therefore deny the same.

102.    Defendants deny the allegations of Paragraph 102.

**ANSWERS TO COUNT I (BREACH OF IMPLIED-IN-FACT CONTRACT AGAINST ALL DEFENDANTS)**

103.    Defendants incorporate by reference their answers to Paragraphs 1 through 102.

104.    Paragraph 104 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 104, including the allegation that Plaintiff and Defendants had a contract.

105.    Defendants deny the allegations of Paragraph 105.

106.    Defendants deny the allegations of Paragraph 106.

107.    Defendants deny the allegations of Paragraph 107.

108.    Defendants deny the allegations of Paragraph 108.

109.    Defendants deny the allegations of Paragraph 109.

110.    Defendants deny the allegations of Paragraph 109.

111.    Defendants deny the allegations of Paragraph 111.

112.    Defendants deny the allegations of Paragraph 112.

113.    Defendants deny the allegations of Paragraph 113.

114.    Defendants deny the allegations of Paragraph 114.

115.    Paragraph 115 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 115, including the allegation that Plaintiff and Defendants had a contract.

116.    Defendants deny the allegations of Paragraph 116, except admit that Mr. Hirschbrich, at a few points, met with Mr. Goesche, Mr. Diekmann, Mr. Gorbunow, Mr. Würtenberger, and Mr. Waitz.

117.    Paragraph 117 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 117, including the implicit allegation that Plaintiff and Defendants had a contract.

118.    Defendants deny the allegations of Paragraph 118, including the implicit allegation that Plaintiff and Defendants had a contract.

119.    Paragraph 119 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 119.

120.    Paragraph 120 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 120, including the allegation that Plaintiff and Defendants had a contract.

121.    Paragraph 121 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 121.

**ANSWERS TO COUNT II (TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114 AGAINST ALL DEFENDANTS)**

122.    Defendants incorporate by reference its answers to Paragraphs 1 through 121.

123.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 123, and therefore deny the same, except admit that Updateme is listed as the registrant for the marks under U.S. Registration Nos. 4,777,340 and 4,777,341.

124.    Defendants deny the allegations of Paragraph 124 to the extent that they describe the marks used by Updatemi as "distinctive."  Defendants are without knowledge or information sufficient

to form a belief as to the truth or falsity of the remaining allegations in Paragraph 124, and therefore deny the same.

125.    Paragraph 125 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 125, and therefore deny the same.

126.    Defendants deny the allegations of Paragraph 126, except admit that upday is offered for download on the European versions of the Google Play store, limited to sixteen European countries.

127.    Defendants deny the allegations of Paragraph 127, except admit that upday displayed its app and mark in October 2017 at the Samsung Developer Conference in San Francisco, CA.

128.    Defendants admit the allegations of Paragraph 128.

129.    Defendants deny the allegations of Paragraph 129.

130.    Defendants admit the allegations of Paragraph 130.

131.    Defendants deny the allegations of Paragraph 131.

132.    Paragraph 132 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations in Paragraph 132, except admit upday uses a mark in connection with the upday app, a news aggregation app.

133.    Defendants deny that upday is offered for download on "various mobile application stores."  Defendants admit that upday is advertised online and offered for download on the European versions of the Google Play store and on the Samsung Galaxy Apps store, with both limited to sixteen European countries.  Defendants admit that the Updatemi app is both offered for download to users in certain countries on the Google Play store and the Apple store.  Defendants are without knowledge or information sufficient to form a belief about the remaining allegations contained in Paragraph 133, and therefore deny the same.

134.    Defendants deny the allegations of Paragraph 134.

135.    Defendants deny the allegations of Paragraph 135, except admit that upday is preinstalled on certain Samsung Galaxy phone models sold in sixteen European countries.

136. Paragraph 136 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 136.

137. Paragraph 137 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 137.

138. Paragraph 138 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 138.

139. Defendants deny the allegations of Paragraph 139.

140. Paragraph 140 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 140.

141. Paragraph 141 states legal conclusions to which Defendants need not respond. To the extent a response is required, Defendants admit that through this action Updateme purports to assert its U.S. trademark rights but are without knowledge or information sufficient to form a belief as to the truth or falsity of the remaining allegations in Paragraph 141, and therefore deny the same.

142. Defendants admit that Updateme is a Delaware corporation that is listed as the registrant for the marks under U.S. Registration Nos. 4,777,340 and 4,777,341. Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegation that Updateme is based in California. Defendants deny that Defendant ASDV maintains an office in the U.S. Defendants deny that upday makes its upday app available for purchase in the United States through the Google Play store, except admit that upday is offered for download on European versions of the Google Play store, limited to sixteen European countries. Defendants deny that upday markets the upday app in the U.S., except admit that upday displayed its app and mark in October 2017 at the Global Samsung Developer Conference in San Francisco, CA. Defendants admit the existence of quoted excerpts in Paragraph 142, but deny that these excerpts accurately reflect the totality of the previously cited *New York Times* article and refer to the article for its content, which speaks for itself. Defendants admit that Jan-Eric Peters is the Deputy CEO and Editor-in-Chief of defendant upday and that Mr. Peters attended the Global Samsung Developer Conference in San Francisco, CA in October 2017 and was in New York in 2017 on behalf of upday. Defendants deny the remaining allegations in Paragraph 142.

143.    Defendants admit that Axel Springer SE and Axel Springer Services are subject to the jurisdiction of this Court.  Defendants deny the remaining allegations contained in Paragraph 143.

144.    Defendants deny the allegations of Paragraph 144.

145.    Defendants admit the existence of quoted excerpts in Paragraph 145, but deny that these excerpts accurately reflect the totality of the previously cited *New York Times* article and refer to the article for its content, which speaks for itself.  Defendants further admit that the Google Play store indicates that there have been between 100,000 and 500,000 installs of the upday application but aver that these installations are limited to the sixteen European countries for which upday has been made available on the Google Play store.  The remaining allegations of Paragraph 145 state a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the remaining allegations of Paragraph 145.

146.    Paragraph 146 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 146, except admit that upday is pre-installed on certain Samsung Galaxy phone models sold in sixteen European countries.

147.    Paragraph 147 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 147.

148.    Paragraph 148 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 148.

149.    Paragraph 149 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 149.

150.    Paragraph 150 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 150.

## ANSWERS TO COUNT III (CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT AGAINST ALL DEFENDANTS)

151.    Defendants incorporate by reference their answers to Paragraphs 1 through 150.

152.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 152, and therefore deny the same.

153.    Defendants are without knowledge or information sufficient to form a belief about the allegations in Paragraph 153, and therefore deny the same.

154.    Paragraph 154 states legal conclusions to which Defendants need not respond.  To the extent that a response is required, Defendants admit that upday is offered for download on the European versions of the Google Play store and the Samsung Galaxy Apps store, with both limited to sixteen European countries.  Defendants deny the remaining allegations in Paragraph 154.

155.    Defendants deny the allegations of Paragraph 155.

156.    Paragraph 156 states a legal conclusion to which Defendants need not respond.  To the extent that a response is required, Defendants deny the allegations of Paragraph 156.

157.    Paragraph 157 states a legal conclusion to which Defendants need not respond.  To the extent that a response is required, Defendants deny the allegations of Paragraph 157.

158.    Paragraph 158 states legal conclusions to which Defendants need not respond.  To the extent that a response is required, Defendants deny the allegations of Paragraph 158.

159.    Paragraph 159 states legal conclusions to which Defendants need not respond.  To the extent that a response is required, Defendants deny the allegations of Paragraph 159.

## ANSWERS TO COUNT IV (FRAUD AGAINST ALL DEFENDANTS)

160.    Defendants incorporate by reference their answers to Paragraphs 1 through 159.

161.    Defendants deny the allegations of Paragraph 161, except admit Axel Springer representatives communicated that they were looking to learn from and perhaps to partner with companies in Silicon Valley.

162.    Defendants deny the allegations of Paragraph 162.

163.    Defendants deny the allegations of Paragraph 163, except admit that Mr. Hirschbrich met with Mr. Waitz and Mr. Gorbunow on March 18, 2014.

164.    Defendants are without knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in Paragraph 164, and therefore deny the same.

165.    Defendants deny the allegations of Paragraph 165.

166.     Defendants deny the allegations of Paragraph 166, except admit that Mr. Goesche and Mr. Hirschbrich met, for personal reasons, at a restaurant in Berlin on or about October 9, 2014 and that Mr. Hirschbrich displayed some version of the updatemi app on his personal mobile phone.

167.     Defendants admit that Mr. Hirschbrich and Mr. Waitz met over lunch on or about November 7, 2014, but deny the remaining allegations of Paragraph 167, including that the alleged meeting concerned next steps for a potential investment or partnership

168.     Defendants deny the allegations of Paragraph 168, except admit that Hirschbrich emailed Mr. Waitz general details about the Updateme app on November 11, 2014.

169.     Defendants deny the allegations of Paragraph 169.

170.     Defendants deny the allegations of Paragraph 170.

171.     Defendants deny the allegations of Paragraph 171.

172.     Defendants deny that Axel Springer failed to disclose and / or conceal any facts from Updateme.  The remainder of Paragraph 172 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 172.

173.     Defendants deny the allegations of Paragraph 173.

174.     Paragraph 174 states a legal conclusion to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 174.

175.     Defendants deny the allegations of Paragraph 175.

176.     Paragraph 176 states a legal conclusion to which Defendants need not respond.  To the extent that a response is required, Defendants deny the allegations of Paragraph 176.

177.     Paragraph 177 states legal conclusions to which Defendants need not respond.  To the extent a response is required, Defendants deny the allegations of Paragraph 177.

**ANSWERS TO COUNT V (PROMISSORY ESTOPPEL AGAINST ALL DEFENDANTS)**

178.     Defendants incorporate by reference their answers to Paragraphs 1 through 177.

179.     Defendants deny the allegations of Paragraph 179.

180.     Defendants deny the allegations of Paragraph 180.

181.     Defendants deny the allegations of Paragraph 181.

182.    Paragraph 182 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 182, including the implicit allegation that Plaintiff and Defendants had a contract.

183.    Defendants deny the allegations of Paragraph 183.

184.    Paragraph 184 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 184.

185.    Paragraph 185 states legal conclusions to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 185.

**ANSWERS TO COUNT VI (UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200 *ET SEQ.* AGAINST ALL DEFENDANTS)**

186.    Defendants incorporate by reference their answers to Paragraphs 1 through 185.

187.    Defendants deny the allegations of Paragraph 187.

188.    Paragraph 188 states legal conclusions to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 188.

189.    Paragraph 189 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 189.

190.    Paragraph 190 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 190.

191.    Paragraph 191 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 191.

192.    Paragraph 192 states a legal conclusion to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 192.

193.    Paragraph 193 states legal conclusions to which Defendants need not respond. To the extent a response is required, Defendants deny the allegations of Paragraph 193.

**FURTHER ANSWER AND AFFIRMATIVE DEFENSES**

By way of further Answer and as affirmative defenses, Defendants deny that they are liable to Plaintiff on any of the claims alleged and deny that Plaintiff is entitled to damages, treble or punitive damages, equitable relief, or to any relief whatsoever and states as follow:

# FIRST AFFIRMATIVE DEFENSE

## (Collateral Estoppel and Res Judicata)

194.    Each of the purported claims set forth in the Complaint against Axel Springer SE, upday GmbH & Co. KG, and Axel Springer Services Inc. are barred by the doctrines of collateral estoppel and / or res judicata, based on the resolution of an action for negative declaratory relief brought in Germany (the "German Litigation").

195.    The German Litigation was based on a demand letter (the "Letter") that Plaintiff Updateme Inc.—together with Phönix New Media GmbH ("Phönix"), another entity operated by Plaintiff's principal, Mr. Hirschbrich, which is domiciled in Austria—sent to Axel Springer SE.  The Letter also alleged that Updateme had claims for injunctive relief ordering Axel Springer SE to cease and desist from the operation of the news aggregation app upday and the use of the smiley logo of upday.

196.    On June 10, 2016, Axel Springer SE (a defendant in this proceeding), upday GmbH & Co. KG (a defendant in this proceeding), and Axel Springer Digital Ventures Inc. (now Axel Springer Services, Inc., a defendant in this proceeding) (together, the "Axel Springer German Litigants"), as plaintiffs, filed an action against Updateme (Plaintiff in this matter) and Phönix (controlled by Plaintiff's principal, Mr. Hirschbrich), as defendants, asking the District Court of Berlin to declare that Updateme and Phönix New Media GmbH are not entitled to any claims against them arising from the development, operation and distribution of the upday app.

197.    On October 4, 2017, following an oral hearing, the District Court of Berlin pronounced a judgment in the German Litigation granting the negative declaratory relief sought by the Axel Springer German Litigants.  The District Court of Berlin held that Updateme and Phönix had no claims against the Axel Springer German Litigants regarding the development, operation and distribution of the "upday" news application under German law.

198.    The German Litigation encompassed the same claims and transactions as in the current litigation because both concerned all alleged interactions between Updateme and its agents (such as Mr. Hirschbrich) and Axel Springer SE, upday GmbH & Co. KG, and Axel Springer Services Inc., and the development, operation, or distribution of the upday app.

199.    The German proceedings were fair.  *See, e.g., Turner Entertainment Co. v. Degeto Film GmbH*, 25 F.3d 1512, 1520 (11th Cir. 1994) ("Germany's legal system clearly follows procedures that ensure that litigants will receive treatment that satisfies American notions of due process.").

200.    U.S. courts recognize German judgments as recognizable and preclusive.

201.    The judgment is provisionally enforceable under German law.

202.    The judgment is final within the meaning of U.S. federal law and has preclusive effect, notwithstanding the pendency of an appeal.  *See Tripati v. Henman*, 857 F.2d 1366, 1367 (9th Cir. 1988).

203.    In the alternative, the judgment may become final within the meaning of U.S. federal law during the pendency of this action.

204.    Thus, Plaintiff's claims are barred by the doctrines of collateral estoppel and res judicata.

## SECOND AFFIRMATIVE DEFENSE

## (Waiver, Acquiescence, and Equitable Estoppel)

205.    To the extent that Plaintiff's contract, fraud, promissory estoppel, and unfair competition claims are based on alleged promises or statements that the Defendants would not develop a competing news app with similar features to that of the Updatemi app, or on alleged promises or statements that Defendants intended to partner with or invest in the Updateme or the Updatemi app, such claims are barred by the doctrines of waiver, acquiescence, and equitable estoppel.

206.    On March 24, 2014, Mr. Hirschbrich emailed Axel Springer SE employee Ulrich Machold, providing basic background on the Updatemi app, noting that Updateme had interesting models for potential investment, and suggesting that the two meet.  On March 27, 2014, Mr. Machold replied to Mr. Hirschbrich, explaining that Axel Springer SE was developing a news app of its own and was unlikely to partner with Mr. Hirschbrich.  As translated, Mr. Machold's text reads: "However, I don't want to hide from you the fact that we are also working on a short-form storytelling product that does in fact sound very similar in part (but not based on technical summaries). Our interest in cooperation or stakes would therefore tend not to be very pronounced right now, at least on my end.

Unless the products end up complementing each other more than seems to be the case now after all. I mean that only as a disclaimer."

207.    After receiving the March 27, 2014 disclaimer, Mr. Hirschbrich and Updateme did not convey any indication that Mr. Hirschbrich or Updateme objected to any Defendants' development of a competing app with similar features, or that Mr. Hirschbrich or Updateme believed that they were entitled to a partnership or investment from any Defendant.

208.    Nor did Mr. Hirschbrich or Updateme suggest that any Defendant had violated any alleged promise or statement that Defendants would partner with or invest in Updateme, or alleged promise that Defendants would refrain from developing a competing app with similar features. (For the avoidance of doubt, Defendants deny that any such promises or statements had been made.)

209.    To the contrary, in paragraphs 65-83 and 164-168 of the First Amended Complaint, Plaintiff appears to allege Mr. Hirschbrich subsequently communicated with Defendants and their agents to promote the Updatemi app. (As detailed in Defendants' responses to those paragraphs, Defendants dispute Plaintiff's characterization of these events, and in certain instances, the existence of the events themselves.)

210.    If such communications occurred as alleged by Plaintiff (which Defendants deny), then those communications would have produced in their recipients the reasonable expectation that Mr. Hirschbrich and Updateme understood and acknowledged that Defendants intended to produce their own competing, similar app and did not necessarily intend to partner with or invest in Updateme or the Updatemi app. To the extent that Defendants or agents of the Defendants engaged in any communications with Mr. Hirschbrich or Updateme, they would have been relying on that reasonable expectation. Although Defendants and their agents might have been aware that Mr. Hirschbrich *sought* a partnership or investment, or that Mr. Hirschbrich *wished* for Defendants to refrain from producing their own competing, similar app, they would have been unaware that Mr. Hirschbrich or Updateme held an actual, reasonable expectation that Defendants would partner or invest in Updateme or that Defendants would refrain from producing a similar, competing app.

211.    Further, Axel Springer SE and upday GmbH & Co. KG reasonably relied on Updateme and Mr. Hirschbrich's silence after the March 27, 2014 disclaimer in proceeding to market with the upday app without first addressing any legal dispute relating to the upday app.

212.    Therefore, in light of clear statements that no partnership was contemplated and that Defendants intended to produce a competing, similar app, any claims based on conduct promising, stating, implying, or otherwise conveying that the Defendants would not develop a competing news app with many similar features to that of the Updatemi app, or that Defendants intended to partner or invest in the Updatemi app, are barred by waiver, acquiescence, and equitable estoppel.

### THIRD AFFIRMATIVE DEFENSE

### (Abandonment)

213.    To the extent that Plaintiff's trademark claims include any claims based on the alleged "smiley logo" identified in paragraph 73 of the First Amended Complaint, those claims fail because the mark has not been used in trade for over three years and should, therefore, be deemed abandoned pursuant to Section 45 of the Lanham Act (15 U.S.C. § 1127).

214.    Plaintiff's Complaint does not make any allegations concerning the use of the smiley mark after September 2014 (*see* ¶ 73).  On information and belief, Plaintiff has not in fact used the smiley mark after that date.

215.    Thus, any claims concerning infringement of the smiley mark are barred because of abandonment.

### FOURTH AFFIRMATIVE DEFENSE

### (Applicable Statutes of Limitation)

216.    To the extent that Plaintiff's contract and fraud claims are based on conduct prior to March 27, 2014 promising, stating, implying, or otherwise conveying that the Defendants would not develop a competing news app with many similar features to that of the Updatemi app, or that Defendants intended to partner or invest in the Updatemi app, the Complaint's contract and fraud claims are barred by the applicable statutes of limitation, including California Code of Civil Procedure §§ 338(d) and 339(1) and California Business & Professions Code § 17208.

217.     On March 24, 2014, Mr. Hirschbrich emailed Axel Springer SE employee Ulrich Machold, providing basic background on the Updatemi app, noting that Updateme had interesting models for potential investment, and suggesting that the two meet.  On March 27, 2014, Mr. Machold replied to Mr. Hirschbrich, explaining that Axel Springer SE was developing a news app of its own and was unlikely to partner with Mr. Hirschbrich.

218.     Defendants incorporate and reallege by reference paragraphs 206 through 211 above.

219.     Thus, in light of clear statements that no partnership was contemplated and that Defendants intended to produce a competing app with similar features, any claims for breach of oral contract or fraud accrued no later than March 27, 2014 and are therefore barred by the applicable statutes of limitation.

### FIFTH AFFIRMATIVE DEFENSE

### (Lack of Personal Jurisdiction)

220.     The Court lacks personal jurisdiction over defendant upday GmbH KG & Co.

### PRAYER

WHEREFORE, Defendants pray for judgment as follows:

1.     That Plaintiff take nothing by way of its First Amended Complaint;

2.     That the First Amended Complaint be dismissed in its entirety with prejudice;

3.     That Defendants be awarded their costs of suit; and

4.     For other such relief as the Court deems just and proper.

DATED: May __, 2018 _____          _____

PETER R. BOUTIN
CHRISTOPHER A. STECHER
KEESAL, YOUNG & LOGAN

TIMOTHY P. HARKNESS (*pro hac vice*)
PETER JAFFE (*pro hac vice*)
ELIZABETH SKEEN (*pro hac vice*)
FRESHFIELDS BRUCKHAUS DERINGER US LLP

Attorneys for Defendants
AXEL SPRINGER SE, AXEL SPRINGER SERVICES INC., AXEL SPRINGER DIGITAL VENTURES GMBH and UPDAY GMBH & CO KG.