UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UPDATEME INC., | Case No. 17-cv-05054-SI (LB) |
| Plaintiff, | |
| v. | **ORDER ADJUDICATING DISCOVERY DISPUTE BETWEEN PLAINTIFF AND DEFENDANTS** |
| AXEL SPRINGER SE, et al., | Re: ECF No. 153 |
| Defendants. | |

## INTRODUCTION

Updateme, the creator of a news-aggregator cell-phone app, claims that the defendants — Axel Springer SE, Axel Springer Services, Inc., Axel Springer Digital Ventures GmbH, and Upday GmbH & Co. KG — allegedly "stole' Updateme's platform and released a copycat app.[1]

Updateme states that it recently learned that the defendants used the code name "Ajax" to refer to Updateme.[2] The defendants have confirmed that there are 5,126 unique documents (including associated family members) within the previously collected ESI that hit on the term "Ajax."[3] The

---

[1] Joint Letter Br. – ECF No. 153 at 1.

[2] *Id.*

[3] *Id.*

ORDER – No. 17-cv-05054-SI (LB)

defendants have not reviewed those documents for responsiveness.[4] Updateme asks the court to order the defendants to review those documents and produce responsive documents within two weeks.[5]

The defendants maintain that the term "Ajax" is a project name that they created to refer to Updateme's threatened litigation, i.e., to describe the dispute itself, not to describe Updateme.[6] The defendants represent that "a sampling of the 'Ajax' documents confirms that, in every responsive document, the term 'Ajax' was used to refer to the dispute itself."[7] The defendants do not provide any details about what sort of sample they conducted (e.g., how large the sample was, whether it was randomly selected, etc.).

Updateme disputes the defendants' representation and claims that the defendants used the term "Ajax" to refer to Updateme, not just the dispute, citing 93 produced documents generally and two documents in particular.[8] The defendants maintain that (1) both documents are privileged and work-product protected and are subject to pending clawback requests and (2) are better translated (presumably from German) as referring to the dispute, not to Updateme.[9] The defendants claim that it would be unduly burdensome and expensive to review the "Ajax" documents at this stage of the litigation.[10] The defendants argue that the burden of reviewing these documents is particularly disproportional to the litigation considering that Updateme supposedly seeks only to recover its share of the defendants' profit from their app but that the defendants (so they claim) have had no profits for Updateme to recover.[11] The defendants finally argue that the term "Ajax" was not

---

[4] *Id.*
[5] *Id.*
[6] *Id.* at 4.
[7] *Id.*
[8] *Id.* at 2.
[9] *Id.* at 4.
[10] *Id.* at 4–5.
[11] *Id.* at 3.

1    included in the ESI Protocol that the parties agreed upon months ago and should not be added at
2    this late stage.[12]

3    The court can decide this dispute without a hearing, N.D. Cal. Civ. L.R. 7-1(b), and rules as
4    follows.

## ANALYSIS

The court begins with a few preliminary observations. Whether "Ajax" refers to Updateme or only the defendants' dispute with Updateme is in some sense a distinction without a difference. Either way, the search term "Ajax" is likely to return documents that are responsive to Updateme's request for "[a]ll communications . . . concerning Updateme or the updaemi® application[.]" Documents concerning the defendants' dispute with Updateme are likely documents concerning Updateme.

Additionally, even if "Ajax" refers to the dispute, that does not mean that documents that contain "Ajax" are necessarily more likely to be privileged or protected from disclosure. Take the following hypothetical. One non-lawyer businessperson writes to another, "How are our profits looking?" The second responds, "We were making $X in profits last year, but now because of Ajax and its threat to our news app, we might not have those profits next year." The two businesspeople in this hypothetical may be using "Ajax" to refer to the defendants' dispute with Updateme; nonetheless, nothing in that email is privileged. To the extent the defendants are suggesting that if "Ajax" purportedly refers to their dispute with Updateme, ESI containing "Ajax" should remain outside the scope of discovery, the court is not convinced.

That said, in light of the current, advanced stage of discovery, the court orders the following. In lieu of reviewing all "Ajax" documents, the defendants must randomly select 10% of the unreviewed documents, review them (and their associated family members) for responsiveness, produce responsive documents (and a privilege log for any responsive documents that are

---

[12] *Id.* at 4.

withheld), and provide a chart listing the number of documents and families reviewed and the rate of responsiveness (including and not including withheld documents). *Cf. In re Viagra (Sildenafil Citrate) Prods. Liab. Litig.*, No. 16-md-02691-RS(SK), 2016 WL 7336411, at *1–2 (N.D. Cal. Oct. 14, 2016) (using sampling to assess search terms). The defendants must complete this process within one week. Following completion, if the parties continue to have disputes regarding discovery of the "Ajax" documents, they should meet and confer.

**IT IS SO ORDERED.**

Dated: October 11, 2018

_____
LAUREL BEELER
United States Magistrate Judge