UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| UPDATEME INC., <br> Plaintiff, <br> v. <br> AXEL SPRINGER SE, et al., <br> Defendants. | Case No. 17-cv-05054-SI (LB) <br><br> **ORDER ADJUDICATING DISCOVERY DISPUTES REGARDING DEPOSITIONS** <br><br> Re: ECF No. 158, 160 |

## INTRODUCTION

Plaintiff Updateme Inc., the creator of a news-aggregator cell-phone app, claims that the defendants allegedly "stole" its platform and released a copycat news app called "Upday." The court assumes the reader's familiarity with the subject matter and procedural history of this case and the parties' various disputes.[1]

The parties have raised new disputes regarding (1) the plaintiff's efforts to depose Dr. Mathias Döpfner, the CEO of defendant Axel Springer SE, and (2) the defendants' efforts to depose Dr.

---

[1] *See, e.g.*, *Updateme, Inc. v. Axel Springer SE*, No. 17-cv-05054-SI (LB), 2018 WL 4945323 (N.D. Cal. Oct. 11, 2018) (addressing discovery dispute); *Updateme, Inc. v. Axel Springer SE*, No. 17-cv-05054-SI (LB), 2018 WL 4952588 (N.D. Cal. Oct. 11, 2018) (addressing discovery dispute); *Updateme Inc. v. Axel Springer SE*, No. 17-cv-05054-SI, 2018 WL 1184797 (N.D. Cal. Mar. 7, 2018) (denying motion to dismiss).

ORDER – No. 17-cv-05054-SI (LB)

Gerhard Eschelbeck, a senior executive at Google (a third party).[2] The defendants move for a protective order preventing the deposition of Dr. Döpfner. The plaintiff moves to quash the deposition subpoena to Dr. Eschelbeck or, in the alternative, a protective order.

The court can adjudicate these disputes without a hearing. N.D. Cal. Civ. L.R. 7-1(b). The court (1) denies the defendants' motion for a protective order preventing Dr. Döpfner's deposition and (2) grants the plaintiff's motion to quash the defendants' deposition subpoena to Dr. Eschelbeck.

## ANALYSIS

### 1. Dr. Döpfner

#### 1.1 Governing Law

The defendants cite to the "apex" doctrine in opposing the plaintiff's deposition of Dr. Döpfner.

"When a party seeks the deposition of a high-level executive (a so-called 'apex' deposition), courts have 'observed that such discovery creates a tremendous potential for abuse or harassment.'" *Jensen v. BNSF Rwy. Co.*, No. 3:13-cv-05955-HSG (LB), 2015 WL 3662593, at *2 (N.D. Cal. May 19, 2015) (quoting *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 282 F.R.D. 259, 262–63 (N.D. Cal. 2012)). "The court therefore has discretion to limit discovery where the discovery sought 'can be obtained from some other source that is more convenient, less burdensome, or less expensive.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "'In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods.'" *Id.* at *3 (quoting *Apple*, 282 F.R.D. at 263). "'A party seeking to prevent a deposition carries a heavy burden to show why discovery should be denied.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "Thus, it is very unusual 'for a court to prohibit

---

[2] Joint Letter Br. re Döpfner – ECF No. 158; Joint Letter Br. re Eschelbeck – ECF No. 160. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 17-cv-05054-SI (LB)  2

the taking of a deposition altogether absent extraordinary circumstances.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "'When a witness has personal knowledge of facts relevant to the lawsuit, even a corporate president or CEO is subject to deposition.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263). "'A claimed lack of knowledge, by itself it is insufficient to preclude a deposition.'" *Id.* (quoting *Apple*, 282 F.R.D. at 263).

### 1.2 Application

The defendants claim that Dr. Döpfner does not possess any unique knowledge. They claim, among other things, that Dr. Döpfner never met with anyone from the plaintiff, is not on any document that predates the plaintiff's January 2016 threat of litigation that refers to the plaintiff, did not attend any meeting with Samsung that were not also attended by Upday CEO Peter Würtenberger (whom the plaintiff has already deposed), received updates on the defendants' Upday app only once a month, and did not personally design Upday's logo.[3] The defendants claim that the plaintiff has not shown that Dr. Döpfner was involved in the matters at issue in this lawsuit any more than any CEO would be involved in a matter and litigation involving his or her company, and that the plaintiff's arguments about "Dr. Döpfner's supposed central involvement supposedly central involvement in upday — a news aggregation app that has lost tens of millions of dollars, has never made a profit, and is one of hundreds of ventures under the Axel Springer umbrella — strain credulity given the enormity of the publishing empire that Dr. Döpfner must manage."[4] The defendants also argue that the plaintiff has not sought discovery from less intrusive sources first, noting that the plaintiff noticed Dr. Döpfner's deposition before it had deposed Mr. Würtenberger, Michael Paustian (Upday's Chief Strategy Officer), or Thomas Hirsch (Upday's CFO and COO).[5]

---

[3] Joint Letter Br. re Döpfner – ECF No. 158 at 2.

[4] *Id.* at 2–3.

[5] *Id.* at 3. As of October 23, 2018 — the date that the parties submitted their letter brief — the plaintiff had deposed Messrs. Würtenberger and Paustian and was scheduled to depose Mr. Hirsch. *Id.* at 1.

ORDER – No. 17-cv-05054-SI (LB)     3

The plaintiff argues that Dr. Döpfner had direct involvement with Upday at the matters at issue in this case. The plaintiff claims that Mr. Würtenberger confirmed that Dr. Döpfner came into the initial meeting with Samsung's Vice Chair with his own agenda (unknown by Mr. Würtenberger) and shared a "vision of having the best news app" with Samsung's Vice Chair.[6] The plaintiff claims that Dr. Döpfner (not Mr. Würtenberger) instructed his lieutenants to live in Palo Alto to revamp the company's strategy (which the plaintiff alleges is where and how the defendants interacted with the plaintiff to "copycat" the plaintiff's news app) and personally led team meetings for the team charged with creating Upday.[7] The plaintiff also disputes the defendants' claim that Dr. Döpfner has had no more involvement with the matters at issue in this litigation than any CEO would have with respect to any matters in his or her company. In particular, the plaintiff disputes the defendants' claim that Upday is "not profitable" and that it is therefore implausible that Dr. Döpfner would not have been centrally involved in it.[8] The plaintiff claims that Mr. Würtenberger testified that Upday was and is one of Dr. Döpfner's top projects in all of Axel Springer.[9] Daniel Böcking, an Upday manager, also supposedly testified that Upday is a "priority project" for Dr. Döpfner (although he apparently knows this only through hearsay and not from Dr. Döpfner himself).[10]

The defendants bear the burden of showing why the deposition of Dr. Döpfner should not go forward. *Jensen*, 2015 WL 3662593, at *3. They have not met their burden. It appears that Dr. Döpfner was personally involved in the strategy regarding Upday, its installation on Samsung phones, and its ongoing development, and that he regards it as one of his top projects in all of Axel Springer. It appears that he may have unique first-hand, non-repetitive knowledge (including about

---

[6] *Id.* at 4.

[7] *Id.*

[8] The question of whether Upday did or did not generate a profit has been a longstanding dispute between the parties. *See, e.g.*, Joint Letter Br. – ECF No. 121 at 2–3; Joint Letter Br. – ECF No. 153 at 2–3. The court does not take sides on this issue; it mentions it only because the issue of whether Upday was or was not profitable is apparently far from undisputed.

[9] Joint Letter Br. re Döpfner – ECF No. 158 at 4.

[10] *Id.* at 3, 5.

his "vision" for Upday and Samsung, which Mr. Würtenberger testified was unknown to him, and his view of Upday as one of his top projects at Axel Springer) and that the plaintiff has exhausted other less intrusive discovery methods.

The defendants' case citations are inapposite. *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374 MMC (JL), 2007 WL 205067 (N.D. Cal. Jan. 25, 2007), involved deposition notices to a company CEO, who had been an officer of the company for a year at the time, and the company's chairman of the board, about the chain of title of certain patents and related products at issue in the lawsuit. *Id.* at *1, 4. The CEO and the chairman both submitted sworn declarations attesting that they had no personal knowledge and, in the case of the CEO, attesting that he was not CEO at the time of the events giving rise to the lawsuit. *Id.* at *1. The requesting party had deposed one of the inventors of the patent at issue, who did not claim that only the CEO could clarify the chain of title to the patent. *Id.* at *5. The defendants here, who bear the burden in preventing Dr. Döpfner's deposition, have not made a similar showing: unlike the CEO and chairman in *Celerity*, Dr. Döpfner has not submitted any declarations, and he appears to have had direct and personal involvement in the matters at issue not repetitive of other witnesses. The defendants' other cases are similarly inapposite.[11]

The court adopts the plaintiff's proposed compromise to limit Dr. Dröpfner's deposition to five hours and directs the parties to negotiate in good faith to schedule a time and place for the deposition.[12] The defendants' motion for a protective order preventing Dr. Dröpfner's deposition is denied.

---

[11] *Cf. Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (in which the company CEO signed an affidavit attesting that he did not know the information the plaintiffs sought, and the court held that if he did, "he must be required to reveal the same"); *In re TFT (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2011 WL 10967617, at *2 (N.D. Cal. Aug. 1, 2011) (an antitrust case in which "Plaintiffs have provided nothing in support of their motion [to compel the deposition of the defendant's CEO] beyond speculation"); *Jensen*, 2015 WL 3662593, at *2–3 (an employment case where the plaintiff sought to depose a witness whom the defendants represented, and the plaintiff did not rebut, "had absolutely no role in the decision to discipline or terminate Plaintiff").

[12] Joint Letter Br. re Döpfner – ECF No. 158 at 5.

## 2. Dr. Eschelbeck

### 2.1 Governing Law

Unlike Dr. Döpfner, Dr. Eschelbeck is not an employee of any of the litigants; instead, he is a third party. The standards governing his deposition thus are different.

As the court noted in addressing one of the prior discovery disputes in this case (between the plaintiff and another third party), "'[n]on-parties may occasionally have to testify and give evidence for and against litigants, but non-parties should not be burdened in discovery to the same extent as the litigants themselves. Requests to non-parties should be narrowly drawn to meet specific needs for information.'" *Updateme Inc. v. Axel Springer SE*, No. 17-cv-05054-SI (LB), 2018 WL 4945323, at *1 (N.D. Cal. Oct. 11, 2018) (quoting *Convolve, Inc. v. Dell, Inc.*, No. C 10-80071-WHA, 2011 WL 1766486, at *2 (N.D. Cal. May 9, 2011); *Beinin v. Ctr. for the Study of Popular Culture*, No. C 06-2298 JW (RS), 2007 WL 832962, at *2 (N.D. Cal. Mar. 16, 2007)). "Generally, the party moving to quash under Rule 45(c)(3) bears the burden of persuasion, but '[t]he party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings.'" *GreenCycle Paint, Inc. v. PaintCare, Inc.*, No. 15-cv-04059-MEJ, 2018 WL 1399865, at *3 (N.D. Cal. Mar. 19, 2018) (quoting *Waymo LLC v. Uber Techs., Inc.*, No. 17-cv-00939-WHA(JSC), 2017 WL 2929439 at *2 (N.D. Cal. July 7, 2017)).[13]

### 2.2 Application

The parties first raise a dispute about the timing of the plaintiff's motion to prevent Dr. Eschelbeck's deposition. The defendants claim that they noticed Dr. Eschelbeck's deposition on September 7, 2018, and the plaintiff accepted service.[14] The defendants claim that on October 2,

---

[13] The defendants cite cases involving depositions of a party (or a party's employee), as contrasted to depositions of third parties, *Pioche Mines Consol., Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir. 1964), *Apple*, 282 F.R.D. at 263, or unrelated to depositions at all, *Phillips ex rel. Estate of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1208–09 (9th Cir. 2002) (addressing a protective order in the context of newspaper's request for access to information regarding parties' settlement).

[14] Joint Letter Br. re Eschelbeck – ECF No. 160 at 4. As a note, while the defendants say they "noticed" Dr. Eschelbeck's deposition, the plaintiff says that Dr. Eschelbeck was subpoenaed. *Id.* at 1–2. A third party cannot be deposed on notice and must be subpoenaed. *Updateme*, 2018 WL 4945323,

2018, the plaintiff agreed to holding Dr. Eschelbeck's deposition on October 31, 2018, without any qualification.[15] The defendants argue that the plaintiff's objection, raised just days before the October 31 date when the deposition was supposed to take place, is untimely. The plaintiff responds that it and Dr. Eschelbeck expressly objected to the deposition "[f]rom the get-go" and asked the defendants to meet and confer.[16] The plaintiff claims that the defendants failed to do so timely.[17] The plaintiff further claims that Dr. Eschelbeck offered to appear on November 21, 2018 (if the court ordered a deposition) and that the defendants accepted that alternative date.[18]

Neither side has submitted any evidence (emails, declarations, etc.) regarding their meet and confers, so the court cannot assess exactly what happened at what point during these negotiations. Nor (even if the parties had submitted evidence) would the court want to go through that exercise. As the court previously explained, "[t]he meet-and-confer and joint-letter-brief processes is meant to encourage parties to (1) talk with each other, see each other's positions, try to find areas of compromise, and work out disputes amongst themselves, and (2) narrow, sharpen, and focus the issues they cannot resolve before they present those issues to the court."[19] The court does not see anything in the parties' letter brief that establishes that either side engaged in undue delay, as opposed to a good-faith effort to meet and confer and try to work out a compromise before involving the court. Given that, and given that the parties apparently agreed that Dr. Eschelbeck's deposition would occur (if at all) on November 21, 2018,[20] which is still weeks away, the court declines to find the plaintiff's motion to prevent Dr. Eschelbeck's deposition untimely. To the

---

at *2 (citing *Loop AI Labs Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2016 WL 3141755, at *2 (N.D. Cal. June 6, 2016)).

[15] *Id.* at 4.

[16] *Id.* at 3.

[17] *Id.*

[18] *Id.*

[19] Order – ECF No. 149 at 3 (citing *Synopsys, Inc. v. Ubiquiti Networks, Inc.*, No. 17-cv-00561-WHO (LB), 2018 WL 2294281, at *1 (N.D. Cal. May 21, 2018)).

[20] The defendants do not deny the plaintiff's statement regarding the November 21 date.

contrary, the court appreciates the parties' attempts to resolve the issue amongst themselves before involving the court.[21]

The court now turns to the merits of the parties' dispute. The defendants say they want to depose Dr. Eschelbeck on (1) how the plaintiff's founder Michael Hirschbrich approached Dr. Eschelbeck for an investment, (2) how Mr. Hirschbrich requested commitments in meetings, (3) the plaintiff's use (or non-use) of nondisclosure agreements, (4) Dr. Eschelbeck's shepherding of the plaintiff through the application process for a Google Digital News grant, and (5) what ideas the plaintiff shared with Dr. Eschelbeck.[22] All of these are topics that the defendants can obtain discovery on from the plaintiff and Mr. Hirschbrich themselves, and a deposition of Dr. Eschelbeck on these same topics (absent some showing of why the defendants' deposition of Mr. Hirschbrich was inadequate) is duplicative and subject to quash. *Cf. Mattel, Inc. v. MGA Entm't, Inc.*, No. CV 04-9049 DOC (RNBx), 2010 WL 11463998, at *1 (C.D. Cal. Oct. 5, 2010). The defendants say they also want to depose Dr. Eschelbeck on (1) his understanding of Silicon Valley norms regarding pitch meetings and (2) his contemporaneous understanding of the uniqueness of the plaintiff's ideas.[23] These are improper attempts to compel Dr. Eschelbeck to act as an unpaid expert witness for the defendants. *Cf. Verinata Health, Inc. v. Sequenom, Inc.*, No. C 12-00865 SI, 2014 WL 2600367, at *3 (N.D. Cal. June 10, 2014) (holding that a deposition of a third party for information about how a company's products compared with its competitors' was "an improper use of a non-party deposition subpoena" that "would require [deponent] to act as an unpaid expert witness") (citing *Convolve*, 2011 WL 1766486, at *2).

---

[21] That is of course not to say that the court would tolerate a party artificially dragging out the meet-and-confer process in an attempt to delay the other side from raising an issue before the court. But the court has no indication that that is what happened here. The court's standing order has mechanisms regarding the meet-and-confer process that can be invoked were one side to try to artificially delay the process. *See* Standing Order – ECF No. 101-1 at 3. The overarching principle for all discovery disputes is that the parties have an obligation to negotiate in good faith and cooperate in discovery. *Synopsys*, 2018 WL 2294281, at *1.

[22] Joint Letter Br. re Eschelbeck – ECF No. 160 at 4–5.

[23] *Id.* at 4–5.

ORDER – No. 17-cv-05054-SI (LB)     8

The court grants the plaintiff's motion to quash the defendants' deposition subpoena to Dr. Eschelbeck.

## CONCLUSION

The court (1) denies the defendants' motion for a protective order preventing Dr. Döpfner's deposition and (2) grants the plaintiff's motion to quash the defendants' deposition subpoena to Dr. Eschelbeck

**IT IS SO ORDERED.**

Dated: October 31, 2018

_____
LAUREL BEELER
United States Magistrate Judge